### JAMES B. GREGG *vs.* HENRY WYMAN & another.

If the owner of a horse knowingly lets him on the Lord's day, to be driven to a particular place, but not for any purpose of necessity or charity, and the hirer injures the horse by immoderate driving, in consequence of which he afterwards dies, the owner cannot maintain an action against the hirer for such injury, although it is occasioned in going to a different place and beyond the limits specified in the contract.

IN this action, which was brought to recover the value of a horse let by the plaintiff to the defendants, the declaration contained two counts, the first in trover for a conversion, and the second in case for the destruction of the horse by immoderate driving. The trial was before *Wells*, C. J., in the court of common pleas.

The plaintiff introduced evidence, that on Sunday, the 12th of July, 1846, he let a horse to the defendants to go to Chel-

sea; that they went to Chelsea beach, a place different from the village of Chelsea, and from thence to Lynn and several other towns not on the route to Chelsea, but distant therefrom ; that there was a material deviation from the route to Chelsea; that the defendants drove the horse, on certain parts of their journey, at great speed, and very immoderately; that the day was one of the hottest days of the season ; and that the horse died very soon after he was returned home to the plaintiff's stable.

The defendants introduced evidence tending to show that there was not any hiring of the horse by them to go to any particular place ; that they did not visit some of the places which the plaintiff's witnesses testified they did visit; that they did not drive immoderately ; and that their journey was one of pleasure merely.

The defendants' witnesses, however, established, and it was conceded, that the route, which the defendants travelled home from Chelsea beach, was not the direct and ordinary route from Chelsea beach to Medford, where the plaintiff's stable was, but materially varied therefrom. It was also conceded, on both sides, that the hiring and the journey were both on Sunday.

On this state of facts, the defendants contended, that as the hiring was on Sunday, and not for the purpose of any work of necessity or charity, the contract was illegal, and, therefore, that the plaintiff could not recover.

But the judge ruled, that a hiring of a horse on Sunday, for the purpose of a pleasure drive, was of itself illegal, and that the plaintiff could not recover for any injury or damage done to the horse, while the defendants kept within the route specified by them at the time of the hiring: yet, that if the jury should be satisfied, that the defendants hired the horse to go to a particular place ; that they went further or to a different place ; and, that in consequence of their thus going further or to a different place, the plaintiff's horse died or was injured, the plaintiff could recover.

The jury returned a verdict for the defendants on the first count, and for the plaintiff on the second. They also stated

to the court, that they found as a fact, that the plaintiff, at the time of the letting, knew that the horse was to be used for a pleasure excursion; but that the injury to the horse was occasioned by driving him beyond the limits specified in the contract of letting to hire.

The defendants alleged exceptions.

*A. H. Nelson* and *J. P. Converse*, for the defendants.

*E. Buttrick*, for the plaintiff. All the cases, in which a party has been defeated, by reason of the illegality of his contract, are where the action was for the consideration, or for compensation for performance. See *Simpson* v. *Bloss*, 7 Taunt. 246; *Cummings* v. *Perham*, 1 Met. 555; *Dedham Bank* v. *Chickering*, 4 Pick. 314; *Armstrong* v. *Toler*, 11 Wheat. 258. If the doctrine contended for on the other side is correct, why might not the defendants have killed the horse instantly, or done what they pleased with him? The ground of action here is not the contract, but the defendants' illegal act. If the contract was illegal, the defendants had no right to take the horse from the stable. The plaintiff's illegal conduct does not extend beyond the contract. The objection should not be carried further than the purpose of the law requires.

The opinion of the court was delivered at the October term, 1851.

FLETCHER, J. By the Rev. Sts. c. 50, §.1, it is enacted, that " No person shall do any manner of labor, business or work, except only works of necessity or charity, on the Lord's day; and any person so offending shall be punished by a fine not exceeding ten dollars for every offence." By the second section it is provided, that " No person shall travel on the Lord's day, except from necessity or charity; and every person so offending shall be punished by a fine not exceeding ten dollars for every offence."

Letting the horse by the plaintiff was a matter of business, which he could not lawfully do on the Lord's day, and travelling with the horse for pleasure, by the defendants, was doing what they could not lawfully do on that day. The plaintiff, therefore, acted unlawfully in letting the horse, and

he let him knowingly for an unlawful purpose.   No person
can maintain any action founded on such an unlawful pro-
ceeding.   The authorities on this point are numerous and
conclusive.   In *Robeson* v. *French*, 12 Met. 24, it was de-
cided, that an action cannot be maintained for a deceit prac-
tised in the exchange of horses on the Lord's day.   The
exchange of horses on that day was an unlawful transaction,
the statute expressly prohibiting such business on the Lord's
day.   The decision was founded on the established princi-
ple, that the court will not lend its aid to a party who founds
his action on an illegal transaction.   So in *Bosworth* v. *Swan-
sey*, 10 Met. 363, it was decided, that a person who travels
on the Lord's day, neither from necessity nor charity, cannot
maintain an action against a town for an injury received by
him while so travelling, by reason of a defect in a highway,
which the town was by law obliged to repair.   The act of
the plaintiff in that case, in travelling on the Lord's day, was
unlawful, and being thus himself in fault, he had no right to
call the defendants to account for their fault.

In the case of *Pattee* v. *Greely*, 13 Met. 284, it was de-
cided, that an action cannot be maintained on a bond, which
is executed neither from necessity nor charity on the Lord's
day.   This decision rests on the principle, that no man can
come into a court of justice to seek the assistance of the law,
who founds his claim upon a contravention of the law.

This general principle, as applied to acts prohibited by the
provisions of the statute for the observance of the Lord's
day, is fully sustained by numerous decisions both in Eng-
land and in various states of the union.   *Northrup* v. *Foot*,
14 Wend. 248; *Lyon* v. *Strong*, 6 Verm. 219, and two cases
cited; *Berrill* v. *Smith*, 2 Miles, 402; *Fennell* v. *Ridler*, 5 B.
& C. 406.   The authorities on this point are very fully col-
lected in the above case of *Pattee* v. *Greely*, 13 Met. 284, to
which reference is made.   The court below seems to have
admitted the general principle, and to have ruled in effect
that the letting was unlawful, and that the plaintiff could
not recover for any injury or damage done to the horse, while
the defendants kept within the route specified by them at the

time of the hiring; yet, that if the jury should be satisfied that the defendants did hire the horse to go to a particular place, and that they went further or to a different place, and that, in consequence of their going further or to a different place, the plaintiff's horse died, or was injured, the plaintiff could recover.

By the instruction of the court, the jury were warranted in finding for the plaintiff, if they were satisfied that the defendants hired the horse to go to a particular place, and went further, and, that in consequence of going further, the horse died, or was injured. The jury found that the injury was occasioned by driving beyond the limits specified in the contract of hiring.

The question now is, Can the plaintiff by law maintain his action on this ground? The letting of the horse by the plaintiff was an act directly prohibited by the statute, and consequently an illegal act, and it is quite too clear for controversy, that no action can be maintained, founded on that illegal transaction. In *Holman* v. *Johnson*, 1 Cowp. 341, 343, lord Mansfield says: " No court will lend its aid to a man who founds his action upon an immoral or illegal act."

In the case of *Wheeler* v. *Russell*, 17 Mass. 258, the chief justice, in giving the opinion of the court, says: " No principle of law is better settled, than that no action will lie upon a contract made in violation of a statute, or of a principle of the common law."

It is also a well-settled principle of law, that if the plaintiff cannot make out his claim without showing an illegal act on his own part, he cannot maintain his action. If the plaintiff's own illegal act forms one link in his chain of title, that is a defective link, which cannot hold the chain together, and the whole must fail.

A party cannot be heard to allege his own unlawful act, and if such act be one of a series of facts necessary to support the plaintiff's claim, then that claim must fail.

The party who seeks redress in a court of justice must come with clean hands; an action which requires for its support the aid of an illegal act cannot be maintained. No

Gregg v. Wyman & another.

action, therefore, can be maintained on an illegal contract, or upon any thing growing out of it. Whether a claim, connected with an illegal transaction, can be maintained in a court of law, may be determined by the test whether the plaintiff must bring in the illegal transaction to aid him in making out his case. There may, perhaps, be a class of cases, which would be considered as exceptions to this general principle, where the parties to an unlawful transaction are not regarded as *in pari delicto*, as in the case of usury, and perhaps some others. In these cases, a party to an illegal proceeding is sometimes allowed to maintain an action, as being an injured and oppressed person, and not equally guilty with the other party. The present case, however, does not fall within this particular class, but must be governed by the general principle, that a party cannot maintain an action when his own illegal act must be shown as a part of his case, and to make out his claim. This general principle is abundantly settled by decisions, to which it will be sufficient simply to refer, without going into any critical examination of the particular cases. *Simpson* v. *Bloss*, 7 Taunt. 246; *Booth* v. *Hodgson*, 6 T. R. 405; *Stokes* v. *Twitchen*, 8 Taunt. 492; *Howson* v. *Hancock*, 8 T. R. 575; *Worcester* v. *Eaton*, 11 Mass. 368, 376; *Babcock* v. *Thompson*, 3 Pick. 446; *Dwight* v. *Brewster*, 1 Pick. 50; *Wheeler* v. *Russell*, 17 Mass. 258; *Vandyck* v. *Hewitt*, 1 East, 96; *Morck* v. *Abel*, 3 B. & P. 35; *Fivaz* v. *Nicholls*, 2 M. G. & S. 500; *Roby* v. *West*, 4 N. H. 285.

In the case of *Simpson* v. *Bloss*, 7 Taunt. 246, 250, Gibbs, C. J., says: " Here the plaintiff pays ten guineas to the defendant, who was his partner in the bet, upon a confidence that he shall get the whole bet of twenty-five guineas from Brograve; and not being able to do so, he seeks by this action to recover it back. How can he make out his claim but by going into proof of the illegal transaction, on account of which it is paid? He says the payment was on a condition that has failed; and it is impossible to prove the failure of this condition, without going into the illegal contract, in which all the parties were equally concerned. We think,

therefore, that the plaintiff's claim is so mixed with the illegal transaction that it cannot be established without going into proof of that transaction, and, therefore, cannot be enforced in a court of law."

In the case of *Fivaz* v. *Nicholls*, 2 M. G. & S. 500, 512, 513, Tindal, C. J., says: " I think this may be determined on short ground, that the plaintiff is unable to establish his claim as stated on the record, without relying upon the illegal agreement originally entered into between him and the defendant. This is an objection which goes to the very root of the action." Maule, J., says : " The principle has been conceded, that the plaintiff cannot recover, where, in order to sustain his supposed claim, he must set up an illegal agreement to which he himself has been a party."

In the case of *Phalen* v. *Clark*, 19 Conn. 421, 432, Church, C. J., in giving the opinion of the court, says : " We suppose it to be a well-settled doctrine, that, if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover." The difficulty in this case was in the application of this general principle to the particular facts of the case. The judgment of the superior court was reversed by the court of errors. Ellsworth, J., dissented from the opinion of the majority of the court of errors, and delivered a dissenting opinion, maintaining with great power of argument, that the plaintiffs could not make out their claim without showing their own unlawful acts, and that, therefore, upon the well-settled principles of law, they could not recover.

In the case of *Booth* v. *Hodgson*, 6 T. R. 405, 409, lord Kenyon, in answering certain arguments used in the case, says : " They say to the court, ' Suffer us to garble the case ; to suppress such parts of the transaction as we please, and to impose that mutilated state of it on the court as the true and genuine transaction, and then we can disclose such a case as will enable our clients to recover in a court of law.' Such is the substance of this day's argument. It is a maxim in our law, that a plaintiff must show that he stands on a fair ground, when he calls on a court of justice to administer relief to him." Ashhurst, J.: " The plaintiffs wish us to

decide this case on a partial statement of the facts; thereby admitting that if the whole case can be disclosed, they have no prospect of success; but we must take the whole case together."

It now remains to apply this well-settled general principle, that when the plaintiff cannot maintain his action without showing an illegal act on his own part, he must fail in his suit, to the present case.

Can the plaintiff maintain his action without showing, and invoking to his aid, his own illegal act in letting the horse?

The defendants are charged as wrong-doers in driving the plaintiff's horse; but how was their conduct in driving the horse wrongful? Doubtless, the plaintiff himself might have driven his horse as far and as fast, without being chargeable with acting illegally or wrongfully. Doubtless, the plaintiff might have given the defendants full authority to have driven the horse as far and as fast as they did drive him. The plaintiff might have let the horse to the defendants to go a given distance in a given time. The plaintiff might have employed the defendants to go upon his business, and to drive the horse as far and as fast as he was driven. Many cases may be supposed, in which the defendants might have done precisely what they did do, without doing any wrong to the plaintiff.

The defendants may have acted rightfully, or they may have acted wrongfully; and whether they acted rightfully or wrongfully must depend entirely upon the terms and conditions upon which they were using the horse, and what right they had to use him. It was indispensably necessary, therefore, for the plaintiff to maintain his case, and charge the defendants as wrong-doers, to show upon what terms and conditions the defendants were using the horse, and what right they had to use him, and that they had departed from those terms and conditions, and exceeded their right.

This was a necessary part of the plaintiff's case to be proved. Accordingly, the plaintiff offered evidence to prove, and did prove, that he let the horse to the defendants to go a particular specified distance; and the verdict for the plaintiff

28 *

was found expressly on the ground, that the defendants went beyond this specified distance, and by so doing had done the damage to the plaintiff of which he complained. The plaintiff proved a special contract, and though the action was tort, yet the verdict was found against the defendants essentially on the ground that they had broken the contract, by driving the horse beyond the place specified, and by so doing had injured the plaintiff. It was only by showing his own illegal act and contract in letting the horse, that the plaintiff could show that the defendants had exceeded their right, and thus become wrong-doers. Though the action was in form tort, yet it was essentially founded on the breach by the defendants of the contract of letting. The defendants hired the horse to go to a specified place; but in violation of the contract of hiring, they went further, and thus became wrong-doers.

If the action be considered as essentially founded on the breach of the contract of letting, then it surely cannot be maintained, as the contract of letting was an unlawful contract, and no action can be maintained on an unlawful contract. But though the action be not considered as founded on the contract, still, to make the defendants wrong-doers, it was necessary for the plaintiff to show the contract of letting; that is to say, to make out his case, it was necessary for the plaintiff to show his own illegal conduct in letting the horse; and such being the case, by a very plain principle of law, he cannot maintain his action.

The act of the defendants, in driving beyond the place specified in the hiring, has been particularly considered, because the case turned upon that point. But the other point in the case, as to immoderate driving, would seem to come within the same principle. Whether, or not, the defendants were wrong-doers by driving the horse faster than they had a right to do, would depend upon their obligation, express or implied, growing out of the contract of hiring; so that upon this point the plaintiff would seem to be obliged to resort to his own illegal act, the act of letting the horse.

In truth, the plaintiff can hardly move at all in this case

Gregg *v.* Wyman & another.

without being met by his own unlawful acts. It was unlaw-
ful for the defendants to travel for pleasure, as they did, on
he Lord's day. In this unlawful act of the defendants, the
plaintiff was himself directly implicated, by knowingly aiding
and assisting the defendants, and furnishing them with the
means of violating the law; so that the plaintiff could not
prove that the defendants drove his horse at all, for a shorter
or longer distance, or at a slower or faster rate of speed,
without at the same time involving himself with them in
violating the law by travelling for pleasure on the Lord's day.

How could the plaintiff be heard to say that he had let his
horse to the defendants, knowingly, for the purpose of break-
ing the law, and ask for redress because the defendants, in
using the horse in violating the law, — the purpose for which
the plaintiff had knowingly let them have him, — had driven
him too far, or too fast? But it is not necessary to dwell
on this point.

The principle, that no court will aid a party who seeks to
maintain his claim by proof of his own illegal acts, is not
only a well-settled, but a most salutary principle of the law.
It should be so. No party should be allowed to invoke the
aid of the law by alleging his own illegal conduct. It is a
sound and wholesome principle, that he who comes to ask
the aid of a court of justice, should come with clean hands.
The law for securing the proper observance of the Lord's
day is a wise and salutary law, and he who tramples on that
law should fully understand that he has no right to call on
a court for aid to enforce a claim founded on his own un-
lawful act.

*Exceptions sustained, verdict set aside, and new trial in the
court of common pleas.*