R. M. SHARP, Appellant, v. THE CITY OF CARTHAGE,. Respondent.

### St. Louis Court of Appeals, February 2, 1892.

1. **Dramshop Keeper :** NECESSITY OF LICENSE FROM CITY AND COUNTY. The keeper of a dramshop in a city is not protected by a license issued to him by the city, but must also procure a county license, unless the charter of the city contains some provision to the contrary.

2. ———— : RIGHT TO RECOVER MONEY PAID FOR LICENSE. Where the necessity exists for a license both from the city and the county, and the dramshop keeper, after obtaining a license from the city and while it is in force, is prevented from obtaining one from the county through the adoption of the local-option law by the city, and the city thus by its own act renders the license issued by it nugatory for a part of the time for which it was issued, the dramshop keeper is entitled to recover from the city an appropriate part of the money paid by him to it for the license. Nor is this right of recovery affected by the circumstance, that the city license was taken out the day before, and in view of the holding of, the election at. which the local-option law was adopted by the city.

*Per Thompson, J., dissenting :—*

3. ———— : ————. The fact that such dramshop keeper took out the license in anticipation of the election about to be held to determine whether local option should be adopted, and in order to defeat the will of the voters for the term of the license in case of the adoption thereof, places him in a position in which he is not entitled to the aid of a court of justice for the recovery of the money expended by him.

4. ———— : ————. The payment for the city license having been made with knowledge of the impending election and of all the facts, and the failure of the dramshop keeper to accomplish his purposes being due to a mistake of the law on his part, the case is one of the voluntary payment of a tax, and this also debars a recovery.

*Appeal from the Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*W. T. Green* and *Houston James*, for appellant.

Municipal corporations, acting without negligence or malice, like individuals, are liable for injuries from their acts, although acting within the scope of corporate authority. *McCombs v. Town Council*, 15 Ohio, 475, reviewed in 18 Ohio, 229 ; *City of Cincinnati v. Penny*, 21 Ohio St. 499. An action will lie for money actually paid to the defendant, and which it is against equity and good conscience for him to retain. Dillon on Mun. Corp., sec. 751, p. 704.

*Howard Gray*, for respondent.

(1) The payment by appellant of the said $800 was a voluntary payment—without protest or objection, and cannot be recovered back. *Walker v. St. Louis*, 15 Mo. 563 ; *Christy v. St. Louis*, 20 Mo. 143 ; *State v. Powell*, 44 Mo. 436 ; *Cahaba v. Burnett*, 34 Ala. 400 ; *Ligonier v. Ackerman*, 46 Ind. 552 ; Dillon on Mun. Corp., secs. 940–947. (2) Money paid to a municipal corporation for a license cannot be recovered back, unless the same was paid under protest, and then only when the authority to collect the license by the corporation was wholly wanting. Dillon on Mun. Corp., sec. 940 ; *O'Brien v. Colusa Co.*, 68 Cal. 503 ; *Lincoln v. Worcester*, Cush. (Mass.) 55 ; *Foley v. Haverhill*, 144 Mass. 352 ; *Winter v. Montgomery*, 65 Ala. 403 ; *Cook v. Boston*, 9 Allen, 393 ; *Grimley v. Santa Clara Co.*, 68 Cal. 575 ; *Stevenson Co. v. Manny*, 56 Ill. 160 ; *Mays v. Cincinnati*, 1 Ohio St. 268. (3) "Ignorance of the law is no excuse." Appellant must have known that a city license would be useless without one from the county also. And his failure to obtain a county license gave him no cause of action against the city to recover what he had legally paid for it.

ROMBAUER, P. J.—The facts of this case, briefly stated, are as follows: On the first day of September, 1887, the appellant was a dramshop keeper in the city of Carthage. As such dramshop keeper he had a county license expiring November 1, 1887, and a city license expiring October 1, 1887. An election had been called by the council of said city to be held on the second day of September, 1887, under the provisions of the local-option law, for the purpose of submitting the question to the qualified voters of the city of Carthage, whether or not intoxicating liquors should be sold in said city. The appellant, one day previous to said day of election, made application to the city for a license for one year to keep his said dramshop, which license was issued to him on said application, in consideration of his having complied with the requirements of the law and paying the sum of $800 into the city treasury. The ordinance of the city of Carthage in force at the time provided that no dramshop license should be issued for a less or greater period than one year.

On November 1, his county license having expired, he made an application to the county court of Jasper county for a county license, which was refused him by said court for the reason that the city of Carthage had adopted the local-option law. Failing to procure a license from the county, appellant closed his saloon and demanded of the respondent the return of $600 of his money paid September 1. The respondent refused to refund said money, and this suit was instituted for the purpose of recovering the same. On the trial of the cause, the above facts appearing, the court declared the law to be that plaintiff could not recover, and entered judgment for the defendant. The present appeal is prosecuted to reverse the judgment, and the error assigned by the plaintiff is that the judgment is against the law, and that he is entitled to judgment on the admitted facts.

The laws in force at the date, when plaintiff applied for these licenses, prohibited any dramshop keeper from selling liquor without taking out a county license, under the penalty of a heavy fine.

The local-option law ( Laws, 1887, p. 181 ) provided among other things that its adoption in any county or city should not be so construed as to interfere with any license issued before the day of election under the law, but such license might run until the day of its expiration. It also provided that the law should become effectual only at the date of the last insertion of the notice stating the result of the election, which the law required to be published for four consecutive weeks in a newspaper. It was also the well-known law of this state at that time, as declared by preceding judicial decisions, that, where the charter of a municipal corporation contains nothing which excludes the right of the county court to require a license for selling liquor, the keeper of a dramshop was not protected by the license from the corporation, but must also take out a county license. *State v. Sherman,* 50 Mo. 265. It is not claimed that the city of Carthage had the exclusive right to issue dramshop licenses for dramshops within the city ; on the contrary the case concedes that, before the plaintiff could legally carry on a dramshop within the city, he was bound to have both a city and county license. The plaintiff as well as the defendant are conclusively presumed to have acted with full knowledge of the law on this subject.

The defendant, in resisting the plaintiff's claim for a partial refund, invokes the proposition which is stated in *Winter v. City Council,* 65 Ala. 403, that, to support an action for money had and received by a municipal corporation, to recover from it the amount of taxes illegally assessed and collected, two facts must concur, namely : *First.* A want of authority for the imposition and collection of the tax, rendering the proceeding

not merely irregular but void ; and, *second*, a payment under compulsion or under duress of person or property. Money illegally or erroneously, but voluntarily, paid for license taxes cannot be recovered back. *Grimley v. Santa Clara Co.*, 68 Cal. 575 ; *Mays v. Cincinnati*, 1 Ohio St. 268 ; *Cook v. City of Boston*, 9 Allen, 393. And the decisions in this state are to the same effect, although they recognize a moral duress as sufficient to constitute involuntary payment. *Maguire v. Savings Ass'n*, 62 Mo. 343 ; *Wolfe v. Marshall*, 52 Mo. 167.

But that is not the question, which governs the decision in this case. The controlling question here is, can money be recovered back when the object for which it is paid is frustrated, not by accident nor by the act of the party paying it, but by the act of the party to whom it is paid ? The license issued by the city of Carthage to the plaintiff created a contract between that city and the plaintiff, which even the local-option law recognized as a property right by providing that its adoption after the grant of the license should not interfere with rights acquired under it. That such a contract cannot be annulled by the city without cause has been frequently decided. *State ex rel. Shaw v. Baker*, 32 Mo. App. 98, 101, and cases cited. The plaintiff did not pay $800 for a piece of worthless paper, but for the privilege of carrying on a dramshop within the city for a period of one year without interference by the city while he complied with other legal requirements. When the city immediately thereafter voted against the sale of intoxicating liquors within its boundaries, it thereby effectually prohibited the county court from granting a license to plaintiff, and rendered its own license worthless. The case is not distinguishable on principle from one, where the city, having power to revoke a license, would on one day issue license for a year, pocket the proceeds, and then revoke it the next day without cause, because the case concedes that the only reason,

why the county court failed to issue a license to the plaintiff, was that the city by its vote had prohibited it from so doing. The principle governing an action for money had and received is that the possession of money has been obtained which cannot be conscientiously withheld. Such an action is designed for the advancement of justice, and it is applicable where a person receives money which in equity and good conscience he ought to refund. *Supervisors v. Manny*, 56 Ill. 160. This language is particularly applicable to the present proceeding. The fact that the plaintiff paid his money the day before the election is entitled to no weight, as he had no right to assume that the city would at once revoke the license which it had granted to him the preceding day. It was a case in which the city could not know its own intention before it was ascertained by a vote of its citizens. If it foresaw the result of the vote, then it was a fraud on its part to take the plaintiff's money.

The judgment is reversed, and the cause remanded to be proceeded with in conformity with this opinion. So ordered. Judge BIGGS concurs. Judge THOMPSON dissents.

### DISSENTING OPINION.

THOMPSON, J. (*dissenting*).—It strikes me that the plaintiff, by attempting to take out a new license for a year before the old license had expired, in anticipation of the election about to be held, and in order to defeat for nearly a year the will of the voters, so far as he was concerned, attempted a fraud on the law, and is, therefore, in no condition to have the aid of a court of justice in recovering his money back. Nor do I see that the city has done, or threatened to do, anything to defeat the privileges granted by its license. It does not offer to prosecute him for keeping open his dramshop, and it has not guaranteed him against prosecution by the state for not having county license. I can see nothing in the case but an evident attempt on the

part of the plaintiff to defraud the will of the voters
with the connivance of the municipal officers, which
attempt has become abortive in consequence of his mis-
take of the law.    The city is clearly estopped by its
license from prosecuting the plaintiff.    The plaintiff's
whole trouble seems to grow out of the fact that he did
not carry his scheme to defraud the will of the voters
far enough ; he did not take out a new license in the
county court in advance of the expiration of his old one.
I cannot see any difference between this case and the
case which would be presented, if a dramshop keeper
should take out city and county licenses, and then fail
to make them available because he could not, for some
reason, procure a government license,—in which case,
I suppose no one would contend that he could sue for
and recover back the money paid for his city and
county licenses.    It seems to me that this is a plain case
of a tax voluntarily paid with full knowledge of all the
facts, in anticipation of and preparation for what
actually happened, ·but under a mistake of law, rein-
forced by the further fact that it was paid in an evident
attempt to defraud the law ; for either which reasons
the plaintiff ought not to recover back.