[No. 1923. Decided April 17, 1896.]

CHARLES PEARSON, *Respondent*, v. THE CITY OF SE-
ATTLE, *Appellant.*

MUNICIPAL CORPORATIONS — CONSTRUCTION OF ORDINANCE — LICENSES
— ESTOPPEL TO QUESTION — REVOCATION — RECOVERY OF UNEARNED
PORTION — VERIFICATION OF CLAIM.

A city, after receiving a license fee for public amusements and permitting a public dance to be conducted under the license thereby obtained, cannot claim, after stopping the dance, that the license did not authorize the dance and that therefore the fee was voluntarily paid and the unearned portion could not be recovered.

A public dance is a public amusement within the meaning of an ordinance imposing a license fee on " every theater, opera, concert . . . or other public amusement that is given in or connected with any saloon."

That a claim presented to a city council was not verified as required by the city charter is no defense to an action against the city for the amount, if it was not rejected on that ground and the charter does not forbid an action on an unverified claim.

Upon revoking a license to conduct a public amusement for which a fee entitling to a license for a year had been received, a city is bound to return the unearned portion of the license fee.

Appeal from Superior Court, King County.— Hon. RICHARD OSBORN, Judge. Affirmed.

*W. T. Scott,* and *Frank A. Steele,* for appellant.
*William Martin,* for respondent.

The opinion of the court was delivered by

ANDERS, J.— On February 4, 1893, the respondent paid to the city of Seattle the sum of $1,000 and procured a license designated as an "amusement license," under ordinance No. 1790, which is an amendment of ordinance No. 1723 of said city. After procuring this license he conducted a public dance in connection with his saloon, in which intoxicating liquors were sold and disposed of, until December 28, 1893, at which time ordinance No. 3152, providing for the punishment of any person who shall conduct, manage, carry on or take part in any dance in any saloon or in any place where intoxicating or malt liquors are sold, and declaring such dances a nuisance, went into effect. After the passage of this last mentioned ordinance and on said 28th day of December, 1893, the respondent was arrested for conducting a dance in violation of its provisions, and, upon his plea of guilty, was fined $50. After that time he discontinued the business, and some time in March, 1894, presented a claim for the unearned portion of the money paid for his license to the city council, and filed it with the city clerk. This claim was, after due consideration, rejected and the respondent thereupon instituted this action in the superior court of King county to recover the amount thereof ($111.10), together with damages for loss of profits, which he alleged he was prevented from making by the revocation of his license. A trial was had to a jury and a verdict was rendered for the respondent for the sum of $117.57. From a judgment for plaintiff for that sum the defendant has appealed.

The first contention of appellant is that the license issued to respondent did not in terms authorize him to conduct a public dance in a room adjoining a saloon or connected with it; but only authorized him to conduct amusements according to Ordinance No. 1790, and that a public dance is not a public amusement in contemplation of that ordinance. The title of the ordinance is, "An ordinance to license and regulate circuses, side-shows, skating rinks, operas, concerts, theaters, shows, exhibitions and other public amusements, and to provide penalties for violations of its provisions." Sec. 1 provides:

" Every theater, opera, concert, show, exhibition or other public amusement that is given in or adjoining to or connected with any saloon, drinking house or other place where intoxicating liquors are sold or disposed of, and where women or girls solicit for salary or commission the sale of intoxicating liquors in said house, the license fee thereof shall be the sum of one thousand dollars ($1,000) per year, in addition to the liquor license, payable in advance."

And Sec. 2 reads:

" That every person who, as proprietor, licensee, manager or agent, shall hereafter conduct, manage or superintend any circus, side-show, skating rink, opera, concert, show, exhibition, or other public amusement of any kind within the city of Seattle, without first having obtained a license therefor, shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine in any sum not exceeding one hundred dollars ($100), or by imprisonment in the city jail not exceeding thirty days, or by both such fine and imprisonment."

It is admitted by defendant's answer that the respondent conducted a dance in a place "adjoining to" and "connected with" his saloon, where intoxicating liquors were sold and disposed of, and where women

solicited for a salary the sale of intoxicating liquors. This dance was, therefore, conducted in such a place and in such a manner as to require the payment of a license fee of $1,000 per year, provided it was a public amusement. The license delivered to respondent did not specify the kind of amusement and the particular place licensed as required by § 4 of the ordinance, but simply authorized the respondent to "run a place of amusement" from February 4, 1893, to February 4, 1894. But it appears that respondent procured it for the purpose of conducting a dance, which he did conduct in the city, and for aught that appears in the record, with the knowledge of its officers, uninterruptedly for a period of more than eleven months. Under these circumstances, we think the city, after receiving and retaining respondent's money, cannot consistently urge that the license was invalid by reason of informality or even that it did not authorize the carrying on of the business in which respondent was engaged, and that, therefore, the license fee was voluntarily paid and cannot be reclaimed.

But we are unable to see that the court erred in its conclusion that a public dance, conducted as this was by the respondent, was a public amusement within the meaning of Ordinance No. 1790. Such was apparently the view of the city officials, for otherwise there would have been no necessity for passing Ordinance No. 3152, declaring such dances a nuisance. By the terms of Ordinance No. 1790 a skating rink is a public amusement, and it would seem that a public dance might be included in the same category without violating the rule of construction contended for by appellant, that no amusements can be included within the terms "other public amusement" but such as are of the same general character as those specified. More-

over, Webster says that the word "amusement" is synonymous with diversion, entertainment, recreation, pastime, sport, and, if that be true, a public dance is a public amusement.

Appellant further insists that the claim of the respondent for the amount overpaid by him to the city for his license was not presented to the proper official, and was not verified as required by the city charter, and, therefore, no action can be maintained upon it. As we have heretofore stated, the claim was filed with the city clerk and was presented to the city council. That was all that was required by the city charter, so far as the presentation of the claim was concerned. It is true that it was not verified as required by the charter, but it is also true that it was not objected to or rejected on that ground, but solely on the ground that in the opinion of the house of delegates, the city was not liable. There seems to be no provision in the city charter that an action shall not be maintained on an unverified claim, and hence the position of appellant is not well taken, and the cases cited in support of it are not applicable. If the council had made the objection here interposed, this claim could, and no doubt would, have been properly verified.

Appellant also contends that a license issued by a city is a mere permit or privilege to engage in a specified business and does not create any contractual relation or obligation between the city and the licensee, and is revocable at the discretion of the municipality, and that there is therefore no obligation on the part of the city to refund the whole or any part of the money paid for such privilege. Conceding that the city, in the exercise of its police power, had a right to revoke respondent's license, as it did virtually revoke

it by Ordinance No. 3152, yet it does not follow that it has a right to retain the money received for a license for a time during which such license was rendered valueless by its own act. The respondent paid his money for a consideration which he has, in part, failed to receive, by reason of the act of the city. On the other hand, the city has received money for the granting of a privilege which it has repudiated and annulled. It is, therefore, in justice and equity, bound to repay it. *Lydick v. Korner*, 15 Neb. 500 (20 N. W. 26); *State v. Cornwell*, 12 Neb. 470 (11 N. W. 729).

See, also, *Martel v. East St. Louis*, 94 Ill. 67.

A careful examination of the record discloses no substantial error, and the judgment is therefore affirmed.

HOYT, C. J., and SCOTT and GORDON, JJ., concur.