Merrimack, }
June 7, 1904. }

### Parrent *v.* Little & *a.*

Where a liquor license is revoked and cancelled by the state board of license commissioners because of illegal sales, the licensee is not entitled to a repayment of the fee *pro tanto* for the unexpired time, although he may have been found not guilty of the offences upon a trial by jury.

Assumpsit, for money had and received. Facts agreed, and case transferred from the October term, 1903, of the superior court by *Chamberlin,* J.

June 6, 1903, the plaintiff paid the defendants, who constitute the state board of license commissioners, the fee for a second-class license expiring May 1, 1904, authorizing him to sell intoxicating liquors under the provisions of chapter 95, Laws 1903. October 9, 1903, the board, after notice and hearing, revoked and cancelled the license because they found that the plaintiff unlawfully sold intoxicating liquor to intoxicated persons. The plaintiff was subsequently indicted for the sales, and upon trials by jury was found not guilty. If he is entitled to recover part of the sum paid for the license, he is to have judgment for $445.16; otherwise, the defendants are to have judgment.

*Frederick T. Woodman* and *Martin & Howe,* for the plaintiff.

*Edwin G. Eastman,* attorney-general, for the defendants.

Chase, J. The decision in the recent case of *Sargent* v. *Little,* *ante, p.* 555, is decisive of this case. There are also reasons peculiar to the case which lead to the same result. The statute authorized the board of license commissioners to revoke and cancel the plaintiff's license for the cause stated in the record. Laws 1903, *c.* 95, *ss.* 14, 15. It contains no provision entitling the plaintiff to recover of the board a portion of the fee paid for the license. The absence of such provision is significant, especially when it is considered that the act provides for a return of the money deposited by the applicant for a license if his application is denied (*s.* 8, *cl.* 9); and for a rebate of a portion of the license fee upon the surrender of a license when the licensee has died (*s.* 13). These provisions show that the subjects of repayment and rebate of license fees were in the minds of the legislators. They and other provisions also disclose a purpose to fully and definitely express in the act the legislative intent. If anything were to be left to implication, it would seem that the repayment of

the deposit upon the denial of an application for a license would be; yet this is expressly provided for. In view of these facts, the absence of a definite provision for the repayment of a portion of the license fee in a case of this kind is weighty evidence that it was not intended there should be such repayment.

Licenses run from the date of their issue to the first day of the following May. Laws 1903, c. 95, s. 6. A licensee may sell and assign his license with the consent of the board (s. 12); but there is no provision which authorizes him to surrender it before its expiration and demand the return of a proportionate part of the license fee. A person taking out a license assumes the risk of the continuance of his purpose and ability to use it until the end of its term. There would be a singular inconsistency in the law if it allowed a licensee whose license is revoked for his misconduct to recover back a portion of the fee, and did not allow such recovery by one who voluntarily ceased to use his license and who had fully complied with the provisions of the law. It is hardly conceivable that the legislature would introduce such an unreasonable discrimination into the statute. On the other hand, it is reasonably certain that the intent was that the licensee should assume the risk of a revocation of his license for cause, as well as the risk of the continuance of his purpose and ability to use it. In effect, if not in express terms, the license contains a condition that it may be revoked ﾂand cancelled by the board of license commissioners for the causes specified in the act. The plaintiff in accepting his license necessarily agreed to the condition.

The defendants have not attempted to forfeit the plaintiff's license or the license fee paid by him, or to punish the plaintiff in any way; they have simply revoked and cancelled his license. As above suggested, the plaintiff upon accepting the license impliedly agreed that the defendants might revoke and cancel it upon the happening of certain contingencies; and the defendants, having found that one of the contingencies has happened, have enforced the contract. The plaintiff's inability to recover a portion of the license fee results from this enforcement, and not from the imposition of a penalty. The statute entrusts the imposition of penalties for violations of its provisions to the ordinary courts of law. The board of license commissioners and the courts act upon the subject-matters within their respective jurisdictions independently of each other. The rules of law governing their findings of fact are different. The board of license commissioners may revoke a license when, upon a consideration of the evidence, it appears to them more probable than otherwise that a legal cause for revocation exists; while a jury cannot properly find a person guilty of an offence under the statute unless they are satisfied of his guilt be-

yond a reasonable doubt.   As a consequence of this difference, the findings of the two tribunals may be conflicting, as they are in this case ; but the finding of one tribunal does not govern or affect the action of the other.   The defendants' order revoking and cancelling the plaintiff's license remains in force, notwithstanding the juries' verdicts that he was not guilty of the offences for which the defendants revoked his license.

A portion of the penalty prescribed for violations of the statute is a forfeiture of the license.   Laws 1903, c. 95, ss. 19, 21, 28. The plaintiff says there is an inconsistency between these provisions and section 14, under which the defendants acted.   It is true that a license which has been revoked and cancelled cannot be forfeited.   If the plaintiff had been adjudged guilty upon the indictments, there would have been no license to forfeit.   But cases may arise in which the board of license commissioners have not revoked the license; they may be brought before the court in the first instance for the punishment of the offender.   The provision for a forfeiture of the license was evidently designed for such cases.

The authorities upon which the plaintiff relies to support his position were cases in which the revocation of the licenses resulted from changes in the law and not from the fault of licensees.   *Sharp* v. *Carthage*, 48 Mo. App. 26 ; *Pearson* v. *Seattle*, 14 Wash. 438 ; *Lydick* v. *Korner*, 15 Neb. 500; *Chamberlain* v. *Tecumseh*, 43 Neb. 221; *School District* v. *Thompson*, 51 Neb. 857.   The last two cases were decided upon the authority of *Lydick* v. *Korner ;* and in *Chamberlain* v. *Tecumseh* the court express doubt as to the soundness of the doctrine.   The cases, if sound, cannot fairly be regarded as authorities in this case, in which the revocation of the license arose from the plaintiff's misconduct.   The case of *McGinnis* v. *Medway*, 176 Mass. 67, very closely resembles the present case in all particulars and fully sustains the defendants' position. In accordance with the terms of the case, there should be

*Judgment for the defendants.*

All concurred.