### LEVY v. KANSAS CITY, KAN.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1909.)

No. 2,834.

1. ACTION (§ 4*)—WHEN MAINTAINABLE—MORAL TURPITUDE OR ILLEGALITY.

It is a general rule of public policy and of law that no action may be maintained which arises out of the moral turpitude of the plaintiff, or out of his violation of a general law enacted to effectuate the public policy of a state or nation.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 17; Dec. Dig. § 4.*]

2. ACTION (§ 4*) — RULE APPLIES TO ACTIONS TO RECOVER LOSSES AND DAMAGES.

The maintenance of actions to recover moneys or property lost, or damages sustained, through transactions or contracts wherein the plaintiffs were guilty of moral turpitude, or of the violation of a general law of public policy, is prohibited by this rule, as well as the maintenance of actions to enforce such contracts.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 4.*]

3. ACTION (§ 4*)—ACTS OF DEFENDANT INDUCING BELIEF IT WILL VIOLATE LAW AND PERFORM CONTRACT WILL NOT SUSTAIN.

The fact that the plaintiff was induced by the misleading acts of the defendant to part with his money or property in the belief that the defendant would continue to violate the law and would perform the illegal contract for which he paid his money will not sustain his action.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 4.*]

4. ACTION (§ 4*) — RECOVERY OF FEE FOR LICENSE TO CONDUCT UNLAWFUL OCCUPATION DENIED.

There was a statute of the state of Kansas (Sess. Laws 1895, p. 294, c. 155) which prohibited pool selling and book making in that state, with an immaterial exception, and there was an ordinance of Kansas City, Kan., that any person might carry on that business in that city for a year for $5,000. The plaintiff bought of the city a license under this ordinance, and paid $5,000 for it, and the second day after he commenced his business the city stopped him, and it has prevented him ever since from carrying it on. He sued the city for the $5,000.

*Held*, the plaintiff was guilty of a violation of a general law enacted to effectuate the public policy of the state of Kansas, and his action was not maintainable.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 17, 18; Dec. Dig. § 4.*]

(Syllabus by the Court.)

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of Kansas.

I. J. Ringolsky (D. I. White and C. F. Hutchings, on the brief), for plaintiff in error.

Ralph Nelson (H. L. Alden, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. Conducting the business of pool selling and book making in the state of Kansas, except within the inclosure of a race track for not exceeding two weeks in any year, was prohibited under a penalty of imprisonment for one year and a fine of $1,000 by section 1, c. 155, p. 294, of the Session Laws of Kansas of 1895. In April, 1898, the city council of Kansas City enacted an ordinance to the effect that any person might carry on the business of book making and pool selling in that city for an annual license fee of $5,000. The plaintiff brought an action against the city of Kansas City, and alleged in his complaint that on July 29, 1905, he purchased a license to conduct the business of book making and pool selling at Nos. 5 and 5½ Central avenue, in that city, for the term of one year, and paid the city $5,000 for it under its ordinance; that he leased and furnished a room at those numbers for that business, and engaged in it there under his license; that on July 31, 1905, the city wrongfully and forcibly arrested him, and by force and threats of repeated arrests has excluded and prevented him ever since from carrying on the business of book making or pool selling in that city; that these acts of prevention and exclusion were instigated and performed by the city at the request and for the benefit of persons who were conducting the same business in that city under a similar license, and for the purpose of depriving him of his $5,000 and of appropriating it to the use of the city; that he has demanded the return of his $5,000, and the city has refused to repay it. The court below sustained a general demurrer to this complaint, and the plaintiff sued out this writ of error to reverse the judgment founded upon that ruling.

"Ex dolo malo non oritur actio" is a maxim which lies at the foundation of a general rule of public policy, the rule that the courts will not sustain an action which arises out of the moral turpitude of the plaintiff or out of his violation of a general law enacted to carry into effect the public policy of the state or nation. Coppell v. Hall, 7 Wall. 542, 552, 557, 558, 19 L. Ed. 244; Thomas v. City of Richmond, 12 Wall. 349, 355, 20 L. Ed. 453; Oscanyan v. Arms Co., 103 U. S. 261, 269, 26 L. Ed. 539; Irwin v. Williar, 110 U. S. 499, 510, 4 Sup. Ct. 160, 28 L. Ed. 225; Embrey v. Jemison, 131 U. S. 336, 345, 9 Sup. Ct. 776, 33 L. Ed. 172; Central Trans. Co. v. Pullman's Car Co., 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55; Pullman's Car Co. v. Trans. Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 43 L. Ed. 108; McMullen v. Hoffman, 174 U. S. 639, 654, 658, 19 Sup. Ct. 839, 43 L. Ed. 1117; Harriman v. Northern Securities Co., 197 U. S. 244, 295, 25 Sup. Ct. 493, 49 L. Ed. 739; Continental Wall Paper Co. v. Voight & Sons, 212 U. S. 227, 29 Sup. Ct. 280, 292, 53 L.

Ed. - —. But counsel say, and it is true, that this is not an action to enforce the illegal contract evidenced by the license, but to recover back the money he paid for this contract that the city repudiated, this contract for which he received no consideration. But the maintenance of actions to recover moneys or property lost, or damages sustained, through transactions or contracts wherein the plaintiffs were guilty of moral turpitude, or of the violation of a general law passed to effectuate a public policy, is prohibited by this rule, as well as the maintenance of actions upon contracts of that nature. Thomas v. Richmond, 12 Wall. 349, 355, 20 L. Ed. 453; Irwin v. Williar, 110 U. S. 499, 510, 4 Sup. Ct. 160, 28 L. Ed. 225; Begbie v. Phosphate Sewage Co., L. R. 10 Q. B. 491, 499; Scott v. Brown & Co., L. T. R. (N. S. 1892) 782; Babcock v. Thompson, 20 Mass. 446, 449, 15 Am. Dec. 235; Abbe v. Marr, 14 Cal. 210, 212; Knight v. Linzey, 80 Mich. 396, 45 N. W. 337, 339, 8 L. R. A. 476; Morgan v. Groff, 5 Denio (N. Y.) 364, 365, 49 Am. Dec. 273; Myers v. Meinrath, 101 Mass. 366, 370, 3 Am. Rep. 368; Haynes v. Rudd, 102 N. Y. 372, 376, 377, 7 N. E. 287, 55 Am. Rep. 815; Bryant v. Wilcox, 137 Mich. 669, 100 N. W. 919, 920; Shaffner v. Pinchback, 133 Ill. 410, 24 N. E. 867, 868, 23 Am. St. Rep. 624; Inhabitants of Worcester v. Eaton, 11 Mass. 368, 377; Shipley v. Reasoner, 80 Iowa, 548, 558, 45 N. W. 1077; Robeson v. French, 53 Mass. 24, 25, 45 Am. Dec. 236; Lyon v. Strong, 6 Vt. 219; Duffy v. Gorman, 64 Mass. 45.

The complaint shows that the city had enacted an ordinance which by its terms authorized the plaintiff to carry on for a year his business of book making and pool selling, that other persons were conducting a business of that nature under that ordinance with the consent of the city, and that the city received the plaintiff's money and issued a license to him; and counsel argue that the plaintiff was deluded into parting with his money by the acts of the city, by its ordinance, by its practice of issuing licenses and of permitting other licensees to carry on a similar business thereunder, and by its acceptance of his money and its issue of the license to him. It is conceded that the action of the city in taking his money for a license to do business for a year under its ordinance, in depriving him of the use of this license two days later, and in refusing to return his money to him, is abhorrent to the sense of fairness and justice and despicable. Nevertheless, one who loses his money or his property by knowingly engaging in a contract or transaction which involves his own moral turpitude, or his violation of a general law enacted to carry into effect a public policy, may not maintain an action for his loss or his damages because the acts of others deluded or persuaded him to believe that they would continue to violate the law or to perform an illegal contract, and this because his own moral turpitude and his violation of the law repel him from the courts. Haynes v. Rudd, 102 N. Y. 372, 376, 377, 7 N. E. 287, 55 Am. Rep. 815; Babcock v. Thompson, 20 Mass. 446, 449, 15 Am. Dec. 235; Abbe v. Marr, 14 Cal. 210, 212; Scott v. Brown & Co., L. T. R. (N. S. 1892) 782; Begbie v. Phosphate Sewage Co., L. R. 10 Q. B. 491, 499; Robeson v. French, 53 Mass. 24, 25, 45 Am. Dec. 236; Gregg v. Wyman, 58 Mass. 322,

325; Duffy v. Gorman, 64 Mass. 45. In view of these established rules of law, the allegations of the complaint that the plaintiff was induced by the acts of the city to fit up a place of business at great expense, and that the city was instigated and induced to prevent him from carrying on his illegal business by those who were conducting a rival business, and that it prevented him from proceeding with his business for the benefit of his rivals and for the purpose of appropriating to the benefit of the city his $5,000, are immaterial and will not be farther noticed. The controlling issue in this case is the legality and righteousness of the acts of the plaintiff. Those of the defendant have little materiality.

In the year 1903 the Legislature of Kansas passed an act which gave to Kansas City, and to other cities of its class, power "to restrain, prohibit, and suppress games and gambling houses" (Laws Kan. 1903, p. 186, c. 122, § 50); and it is contended that this act effected by the use of these words a repeal of the general law of 1895 which prohibited book making and pool selling in the state. The argument is that, because games and gambling houses could not be restrained unless they were permitted, the effect of this statute must have been to repeal the prohibition of the former statute and to permit them. But the act of 1895 is a general law putting into effect a public policy of the state of Kansas regarding book making, pool selling, and gambling in various other forms, while that of 1905 is a general law granting powers to and imposing duties upon certain cities of the state. The two acts treat of different subjects, are not in pari materia, and the act of 1905 evidences no intention of the Legislature to modify or repeal the law of 1895. The conclusion is that it did not repeal it, and that the law of 1895 is still in force.

It is said that this law is unconstitutional; but no provision of the Constitution of the United States, or of the Constitution of Kansas, which it is alleged to violate, is cited, and no reason why it is unconstitutional is suggested, except that the Supreme Court of Missouri once held a similar statute inconsistent with the Constitution of that state. State v. Walsh, 136 Mo. 400, 37 S. W. 1112, 35 L. R. A. 231. The Supreme Court of Kansas, however, which is controlling authority in the national courts upon the question whether or not this statute conflicts with the Constitution of that state, has sustained and enforced it. Levy v. Kansas City, 74 Kan. 861, 86 Pac. 149. No provision of the Constitution of the United States which it violates occurs to our minds, and the suggestion that it is unconstitutional must be overruled.

Cases are cited in which corporations have been held to be estopped from denying that their officers had authority to do lawful acts for the corporation within the scope, but beyond the limits, of the power of the officers (Martel v. City of East St. Louis, 94 Ill. 67), and in which they have been compelled to return moneys paid for licenses and ultra vires contracts which they subsequently revoked or repudiated (Pearson v. City of Seattle, 14 Wash. 438, 44 Pac. 884; Brown v. City of Atchison, 39 Kan. 37, 17 Pac. 465, 7 Am. St. Rep. 515; Railroad Company v. Howard, 7 Wall. 392, 19 L. Ed. 117; Central

Trans. Co. v. Pullman's Car Co., 139 U. S. 24, 58, 59, 11 Sup. Ct. 478, 35 L. Ed. 55). The rule is invoked that, where one has availed himself of an unconstitutional law to secure all the benefits of a contract, he may be estopped from pleading its unconstitutionality to defeat an action to compel him to bear its burdens. Ferguson v. Landram, 5 Bush (Ky.) 230, 96 Am. Dec. 350; Stewart v. Board of Commissioners, 45 Kan. 708, 26 Pac. 683, 23 Am. St. Rep. 746; Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187. Attention is called to the fact that courts of equity have sometimes relieved parties from the loss of, or from injury to, their rights of property which have resulted from mistakes of law. Freichnecht v. Meyer, 39 N. J. Eq. 551, 558; Bales v. Hunt, 77 Ind. 355, 359, 360; Kerr on Fraud and Mistake, 400. Counsel argue from these decisions that the courts should hold that the city is estopped from denying the validity of its ordinance and should grant him a recovery of the money he expended for his license. But the answer to this argument is that in none of the cases he cites did the fatal vice of the moral turpitude of the plaintiff, or of his violation of a general law of public policy, inhere, and for that reason they are neither controlling nor persuasive in the case at bar. The question here is, not what the plaintiff might have recovered in the absence of that vice, but what he can recover in the presence of it.

In Brent v. State, 43 Ala. 297, 301, cited by counsel for the plaintiff, Brent was indicted for the violation of a statute which prohibited the operation of a lottery; but the court held that he was lawfully licensed to carry on the lottery under a subsequent statute, which in so far as it created a corporation was unconstitutional, but in so far as it granted a license to the defendant in that case was legal. The court then proceeded to declare that the defendant was not charged with notice that the second statute was unconstitutional, and counsel found upon this last statement the contention that the parties to this action were not charged with knowledge that the ordinance was void and that the business of book making and pool selling was illegal. But the declaration in the Brent Case upon which they rely was obiter dictum, and if it were a true statement of the law it would be far from convincing that the parties to this suit were ignorant of the general law of 1895 and of the illegality of the ordinance and the license. The act of 1895 was not a new law. It was 10 years old when the plaintiff procured his license. It not only prohibited him from carrying on the business of book making and pool selling on Central avenue in the city of Kansas City, but it disclosed a public policy of the state which had been patent and well known for more than 10 years, the policy to prevent the carrying on of the business of book making and pool selling in that state. Much is written in the brief of counsel for the plaintiff of a mistake of law into which the parties to this action are supposed to have fallen; but the complaint has been searched in vain for any averment that either of them was ignorant of the act of 1895, or that either of them believed that the ordinance of 1898, was valid, and in the absence of any such averment or proof

the legal presumption is conclusive that they knew the law and that they intended to disregard it.

There is, therefore, no escape from the result that the plaintiff is here asking the court to compel the defendant to restore to him money which he paid to it for a license to carry on a business prohibited by a penal statute, and he falls far within the rule that courts will not lend their aid to parties to recover money or property lost through contracts or transactions in which they were guilty of the violation of a general law enacted to carry into effect the public policy of a state or nation; and the judgment below is affirmed.