### CITY OF FITZGERALD *v.* WITCHARD *et al.*

The mayor and council of the City of Fitzgerald received the prescribed fee, and, in consideration thereof, issued a license authorizing a person to engage in the sale of intoxicating liquors for the remainder of the year. Before the expiration of the time, the General Assembly enacted a law providing for a higher license fee for the right to sell such liquors in the county of Irwin, including the City of Fitzgerald. See Acts 1906, p. 430. When this law went into effect, the licensee, without any interference or direction from the municipal authorities, ceased to engage in the sale of such liquors, and, before the term expired, applied to the municipal authorities for a return of so much of the money paid for his license as would be in proportion to the time in which he did not engage in selling such liquors. The application was not acted upon by the mayor and council during the term of the license, but, after the expiration of the term, successors to the mayor and council acted upon the application, and resolved to refund the money. *Held,* that a petition by citizens and taxpayers to enjoin the city authorities from refunding the money, alleging facts substantially as stated, was not open to general demurrer.

Argued February 13,—Decided April 16, 1908.

Equitable petition. Before Judge Whipple. Ben Hill superior court. May 21, 1907.

S. M. Witchard, S. G. Pryor, and H. A. Buckhart, alleging themselves to be citizens and taxpayers of the City of Fitzgerald, instituted suit against the City of Fitzgerald, and alleged: The price for a license to retail whisky within the City of Fitzgerald, Ga., for the year 1906, was $1,000 per annum, payable $500 January 1 and $500 July 1. On January 1, 1906, the City of Fitzgerald granted and issued to Wiley Williams, T. S. Glover, W. D. Barnett & Co., Gabe Lippman, E. T. James, Smith Brothers, and Joe Stump, each, a license to retail whisky within the limits of the city for the year 1906; and each of them paid to the treasurer of the City of Fitzgerald $500 on January 1, 1906, and $500 on July 1, 1906, and the city issued licenses to them, authorizing them to retail spirituous and malt liquors in said city for the full period of 12 months,—from January 1, 1906, to December 31, 1906. These licenses were not revoked during said term by the City of Fitzgerald, nor were any of them surrendered or delivered to the city, but each of said parties held, and was entitled, as far as the City of Fitzgerald was concerned, to all the rights and benefits arising under the licenses. Each of said parties, operating under the license granted to him, opened a place and carried on a retail whisky business in said city until August 11, 1906, when each ceased to engage in said business, without any interference or order or direction or fault of the City of Fitzgerald. During the year 1906, each of said parties made an application to the mayor and council of the City of Fitzgerald to refund to each of them $385, aggregating the sum of $2,700. The council did not act upon the application, but on January 7, 1907, a new mayor and council qualified, and assumed the duties of mayor and council of the City of Fitzgerald; whereupon the application was renewed, and on February 4, 1907, the City of Fitzgerald, through its mayor and council, passed a resolution authorizing the clerk and mayor to draw warrants on the funds of said city, one in favor of each of said licensees, for $385, aggregating $2,700. It is alleged, that unless said city be enjoined, the officers will proceed to pay over said sums; that by the charter of the city the city council were given the power to control the finances and property of the city and appropriate money for corporate purposes only, and provide

for the payment of the debts and expenses of the corporation: that the said amount that the city, through its council, is attempting to refund is not for corporate purposes, nor for debts or expenses of the city, and the city has no legal right to pay the same; that the petitioners have no complete and adequate remedy, except in a court of equity, and will be irreparably damaged by the payment of said amounts, for the reason that they, being taxpayers, will be forced to contribute their pro-rata share of said amount. The prayer is for a temporary restraining order and permanent injunction against the payment of said amounts, and for process. At the appearance term the defendants demurred, on the ground that "the petition does not state facts sufficient to constitute any ground for injunction or other equitable relief, as prayed." The demurrer was overruled, and the defendant excepted.

*Haygood & Cutts*, for plaintiff in error, cited: Acts 1896, p. 157; Acts 1901, p. 380, sec. 6; Ga. R. 126/594; 114/462; 123/483; 105/1, 22; Civil Code, §3924; 1 Pom. Eq. Jur. (3d ed.) §385; 16 Cyc. 141 (4), 143, note 78; 100 Ill. 415; 92 Tex. 229; 136 Fed 46; Cool. Const. Lim. (3d ed.) 320; 1 Ohio (N. S.) 21; 51 Neb. 857 (71 N. W. 728); 23 Cyc. 153, note 45; 29 A. & E. Enc. (2d ed.) 54; Dill. Mun. Corp. (4th ed.) 462, note.

*McDonald & Quincey*, contra, cited Acts 1906, p. 161, sec. 20.

ATKINSON, J. On the argument the point was made that even if, under the ruling in *Melton* v. *Moultrie*, 114 Ga. 462 (40 S. E. 302), the licensee, after paying for the license, could not compel a return of the money upon revocation of the license by the municipal authorities, yet, inasmuch as the municipal authorities are willing and desire to refund the money, and the plaintiffs have made their complaint in a court of equity, the case should be controlled by principles of equity, and the municipal authorities, in equity and good conscience, ought to refund the money, under the facts of this particular case, and that they should not be enjoined when they undertake voluntarily to do so. A careful examination of the record fails to disclose wherein equity and good conscience require the city authorities to refund the money. The license was granted, and the municipal authorities took no voluntary action terminating the same. Nor does it appear that during the existence of the license the city authorities undertook voluntarily to refund any part of the money. The term of the license thus com-

menced and ended without any offer or resolution by the mayor and aldermen voluntarily to refund the money. On its face the petition did not show why the licensees quit business. But if it be assumed that the act of August 10, 1906, was the cause (as argued by counsel), the agency which prevented the licensees from enjoying the privileges was the State law, separate and distinct from the municipal government. There is no more reason in equity and good conscience why the municipal authorities should be allowed to refund the money in this instance than there would have been had the licensee been prevented from enjoying the privileges of his license under some other, independent agency, over which the municipal government had no power or control. After the term of the license had been completed, without the municipal authorities attempting in the exercise of a discretion to refund any part of the money, the transaction was entirely closed. The money paid for the license passed into the ownership of the city, beyond any means of redemption, and the succeeding municipal authorities had no discretion or power to dispose of public funds in the manner attempted. *Judgment affirmed. All the Justices concur.*