## PETERSON v. TOWN OF GUERNSEY.

(No. 921; Decided Sept. 22, 1919; 183 Pac. 645.)

INTOXICATING LIQUORS—REVOCATION OF LICENSE—RECOVERY OF UN-EARNED PORTION—STATUTES—LEGISLATIVE CONSTRUCTION.

1. The discretion of a Board of County Commissioners to grant, refuse, or revoke a retail liquor license is limited to the cause stated in the statutes. (C. S. 1910, Sec. 2835-2836.)

2. Where a retail liquor license is revoked by the Board of County Commissioners without the fault of the municipality that received the license money, the grantee cannot recover the unearned portion of such license fee paid voluntarily, and this is particularly true in view of Laws of 1911, Chap. 13, Sec. 1, providing that no liquor license money shall be refunded.

3. A construction of a statute by the legislature as indicated by the language of a subsequent enactment is entitled to great weight.

ERROR to District Court, Platte County; HON. WILLIAM C. MENTZER, Judge.

Action by Kate F. Peterson against the incorporated town of Guernsey, Platte County, to recover the unearned portion of a license fee for the sale of intoxicating liquors. From a judgment of dismissal, plaintiff brings error.

*Kinkead and Henderson,* for plaintiff in error.

There was no cause shown for the revocation of the license; the discretion of the board to revoke a license is

limited to causes stated by statute. The courts will prevent an abuse of power (Bennett v. City, 76 N. W. 844; Peterson v. City, 46 Pac. 657; Allan v. Drew, 44 Vt. 174). A license cannot be revoked without cause (23 Cyc. 156); the unearned license money should be refunded (Bart v. Pierce Co. (Wash.), 111 Pac. 582; Northrop v. Graves (Conn.), 50 Am. Dec. 264; Scott v. New Castle (Ky.), 39 Am. Dec. 479; Allman v. Okla. City, 17 A. & E. Ann. Cases, 184 (Okla.)). Plaintiff paid money for a privilege which the town has repudiated and it is bound in good conscience to return it. (Pearson v. City of Seattle (Wash.), 44 Pac. 884; Scott v. New Castle (Ky.), 21 L. R. A. N. S. 112; Allsman v. City Okla. (Okla.), 17 A. & E. 184; Shue v. School Dist. No. 6 (Neb.), 152 N. W. 567; Hirn v. State of Ohio, 1 Ohio St. 15; City of Marshall v. Snediker, 78 A. D. 534; State v. Ritter (Wash.), 134 Pac. 493.) A license constitutes property (Fisher v. Cushman, 103 Fed. 860, 51 L. R. A. 292; Lyman v. Brewing Co. (N. Y.), 54 N. E. 577; In re. May, 5 Am. Bank Rep. 4). The licensee is entitled to recover (Scott v. New Castle, 21 L. R. A. N. S. 112; People v. Lyman, 55 N. Y. S. 76). Courts may inquire into the validity of a revocation order by collateral proceedings (Board of Com'rs v. State ex rel. Brown, 147 Ind. 476, 46 N. E. 908; Flournoy v. City of Jeffersonville, 17 Ind. 169, 79 Am. Dec. 468; Wilkins v. State, 113 Ind. 514, 16 N. E. 192; State v. Johnson, 105 Ind. 463, 5 N. E. 553; Mayor, etc., of City of Harvey v. Dean, et al., 62 Ill. App. 41). The functions of the board in granting or revoking a liquor license are ministerial (29 Cyc. 1443). The license was revoked without fault of the licensee, and the unearned portion should be refunded (Allsman v. Okla City, 16 L. R. A. N. S. 511, 95 Pac. 468).

*Marion A. Kline* and *Oscar O. Natwick,* for defendants in error.

The license was revoked on the ground that the holder was conducting a disorderly place (2836 C. S.). It was the duty of the board to revoke it under the statute (Bartlett v. R. R. Co., 71 N. E. 204); the order of revocation is not

subject to collateral attack (San Mateo Co. v. Coburn, 63 Pac 78; Riverside Co. v. Mfg. Co., 86 Pac. 900; Donalson v. Lawson, 25 N. E. 903; Com. v. Wall, 145 Mass. 216). A license made subject to revocation by the passage of a prohibitory law does not justify recovery of the unearned portion by the licensee (Peyton v. Hot Springs County, 53 Ark. 236; Toman v. Westfield, 70 N. J. L. 610, 57 Atl. 125; McGinnis v. Medway, 176 Mass. 67; Fitzgerald v. Witchard, 130 Ga. 552, and cases cited. See also Wood v. School Dist., 115 N. W. 308). The case of Allsman v. Okla. City, cited by the plaintiff in error, is not to the point. It seems needless to cite further authority in view of the provisions of Chapter 13 of the Session Laws of 1911, expressly prohibiting the refunding of money paid to a municipality for liquor license. The license money was paid voluntarily with full knowledge of the provisions of the statute above referred to.

BLYDENBURGH, JUSTICE.

The plaintiff in error, plaintiff below, brought this case in the district court of Platte county to recover the sum of $926.05 from the defendant incorporated town of Guernsey, as the alleged unearned portion of a license fee paid for a license granted to the plaintiff by the Board of County Commissioners of Platte county to sell intoxicating liquor at retail at a designated place within the defendant town. An amended and substituted petition was filed by the plaintiff by leave of court, and a demurrer "That said petition does not state facts sufficient to constitute a cause of action against the defendant" and "that the facts stated in the petition are not sufficient to entitle plaintiff to the relief demanded in said petition or to any relief whatsoever," having been sustained by the court and the plaintiff declining to plead further, judgment was rendered against the plaintiff and her action dismissed, and seasonable exceptions having been taken by plaintiff the case is here on error alleged in sustaining the demurrer and rendering the judgment of dismissal.

The sole question before this court is, does the amended and substituted petition state a cause of action against the defendant?

Said petition, in substance, alleges: That the defendant is an incorporated town situated in Platte county, Wyo.; that the Board of County Commissioners of Platte County, on proper application by plaintiff on June 5, 1916, licensed plaintiff to maintain and carry on the business of retail liquor dealer in a certain building in the defendant town in consideration of which license the plaintiff paid into the treasury of the defendant the sum of $1,000 as required by law. The license to run from Jan. 4, 1916, to Jan. 4, 1917. Said license being set out in full in the petition. That after, but not before, the issuance of the said license the plaintiff entered upon the business authorized by the license and in strict conformity therewith, and with the law applicable thereto, and continued to operate thereunder until the said permit was revoked by the said Board of County Commissioners, but not after the license was revoked. "That during all the time plaintiff operated under said permit she neither suffered nor permitted any disorder, disturbance of the public peace, drunkenness or unlawful games or practices or any violation of any law whatsoever in or about the house or place for which said license was granted aforesaid, but, on the other hand, plaintiff states that at all times subsequent to the granting of said permit aforesaid, plaintiff conducted said place in an orderly and lawful manner and strictly as required by law; and that subsequent to the granting of said permit she gave to said Board of County Commissioners no cause or reason or lawful excuse for the cancellation or revocation of said permit. Nor did any of her agents or employees give said Board any lawful reason or excuse or cause for the revocation of said permit, but on the other hand performed her duties in and about said place in strict accordance with law." That on Feb. 2, 1916, said Board of County Commissioners, no fault, cause or reason having been furnished therefor by the plaintiff or her agents, revoked the license and notified plaintiff that said revocation

would become effective at 12 o'clock, midnight of Feb. 5, 1916, at which time plaintiff discontinued said business and ever since has ceased to operate under said license; that no previous notice was given plaintiff of the intention of the board to revoke said license or any opportunity to be heard thereon, and no objections or complaints as to plaintiff's conduct of the place were filed with the board or made against the plaintiff; that the board revoked said license "without any pretense of lawful reason or ground therefor existing or occurring at any time since the issuance of said permit;" that plaintiff at all times conducted a quiet and orderly place in strict compliance with law in every particular. That by reason of the action of the Board of County Commissioners plaintiff was denied the right to carry on said business subsequent to Feb. 5, 1916, "and without any fault on her part or any of her agents 305/365 of the consideration for said sum of $1,000 paid by plaintiff to the Treasurer of the Town of Guernsey for said license, to-wit: The sum of $926.05, has wholly failed and plaintiff received nothing whatever therefor; that said defendant is now wrongfully withholding from plaintiff said sum of $926.05 and refuses to return the same to plaintiff; and that said town of Guernsey aforesaid is therefore indebted to plaintiff in the sum of $926.05 with interest thereon from the sixth day of February, 1916." The petition then alleges that the $1,000 is still in the town treasury, having been ordered by the town council to be kept in a special fund to await the result of this action, and that plaintiff presented her verified claim as required by the statute to the town council for allowance and that said town council on November 9, 1916, rejected and refused to allow said claim.

The demurrer admits these facts as true for the purposes of this case, and the question to be decided is: Can one who has paid the required license fee into a city or town treasury for a liquor license granted by the Board of County Commissioners of the county, which has ceased to be effective through no fault of the person licensed, *and through no action or fault of the city or town or its officers,* recover

an amount of the money paid proportional to the time during which the license was inoperative?

Under the laws of this state relating to the issuance of liquor licenses in force at the times mentioned in the petition in this case, the boards of the county commissioners of the several counties were the officers vested with the power to grant licenses to sell intoxicating liquors, but when granted the license fee or tax of $1,000 provided by statute for the yearly license was to be paid into the treasury of the city or town within which the place mentioned in the license was situated, and additional power was given to the municipality to regulate license or suppress the sale. This power was in some instances exercised by the town by enacting additional town licenses of a regulatory character, but as far as appears from the record before us, had not been taken advantage of in any way by the defendant town of Guernsey. That the power of the Board of County Commissioners to grant or refuse licenses was not one of unlimited discretion or to refuse without some cause based upon the qualifications of the applicant as indicated in the statute, this court decided in State v. Board of Commissioners of Platte County et al., 177 Pac. 131. The power of the Board to revoke licenses is contained in sections 2835 and 2836 of Wyoming Compiled Statutes, 1910, which are as follows:

Sec. 2835. "Whenever any person or persons, having a retail liquor license, shall suffer or permit any disorder, disturbance of the public peace, drunkenness, or unlawful games or practices, or violation of any law whatsoever, in his, her or their house or place for which such license shall be granted, such person or persons shall forfeit said license, and such license shall not be renewed for three months thereafter."

Sec. 2836. "Whenever it shall appear to the board of county commissioners that any person licensed as aforesaid is conducting a disorderly place it shall be within the power of, and further the duty of said board, by order duly made, to revoke said license, and in such case there shall be no rebate of the license fee of such persons."

Under the maxim, *"Expressio unius est exclusio alterius"*, the power of revocation is limited to the causes stated in these statutes. (17 R. C. L. 555.) And what was said in the case of Pehrson v. City Council of City of Ephraim, 46 Pac. 657, on page 658, is applicable here: "If, then, those sitting to administer the law, upon lawful application therefor, can only refuse a license for cause, and must determine each case upon relevant facts, and exercise a sound discretion, can they revoke such license at mere will? Counsel for the appellant insists that section 2, above quoted, confers such power. We do not think this position tenable. Under such a construction the two sections would be in conflict with each other, or, rather, the effect and operation of the one would avoid and annul the effect and operation of the other, because, under the first section, upon application therefor, unless good cause existed for refusing, the license would have to be granted, and under the second it might be immediately revoked without cause. This would be unreasonable." It may therefore well be admitted that under the facts alleged here the action of the board of county commissioners in revoking the license was unwarranted and void. (23 Cyc., 156.)

But does that give the plaintiff the right to recover the money from the defendant town? By the weight of authority it is generally held that in the absence of statutory authority to refund, there can be no recovery of an unearned portion of a license fee from a municipal corporation. (23 Cyc., 153.) The reasons given for these decisions are that the payment is voluntary and under the well established principle of law, "That money paid voluntarily and with knowledge of the facts cannot be recovered and that this is especially true of money paid in the nature of taxes, even if the taxes are illegal." It is, however, claimed by the plaintiff that an action in the nature of assumpsit, such as the one at bar, "will lie whenever one has the money of another which he in equity and good conscience has no right to retain," and a number of cases are cited and quoted in the brief sustaining this principle as applied to cases where a

license to sell liquor has been revoked, or failed for various causes. We think that all of these cases are distinguishable from the case at bar. In nearly all the decision is based on the fact that the license failed or was revoked by the act of the defendant city and the action is brought against the one who granted the license and received the money. In a number of the cases cited the courts based the decision on the fact that the money had been paid under mistake of either fact or law and could therefore be recovered. (Northrop's Executors v. Graves, 50 Am. Dec. 264; Ray v. New Castle (Ky.), 39 Am. Dec. 479; Scott v. New Castle (Ky.), 21 L. R. A. (N. S.) 112.)

The cases that hold a recovery can be had base the right on the principle that the defendant is wrongfully retaining money of the plaintiff, as stated in Soderberg v. King County, 15 Wash. 194, 55 Am. St. Rep. 878, 882, quoting from State v. St. Johnsbury, 59 Vt. 332, as follows: "When the fact is found that the defendant has the plaintiff's money, if he can show neither *legal nor equitable ground for keeping it,* the law creates the privity and the promise." The italics are ours. And the same case, quoting from Attorney General v. Perry, 2 Comyn, 481, states the rule as follows: "Whenever a man receives money belonging to another without any reason, authority, or consideration, an action lies against the receiver as for money received to the other's use; and this as well where the money is received through mistake, under color, and upon an apprehension, though a mistaken apprehension, of having good authority to receive it, as where it is received by imposition, fraud, or deceit in the receiver." The case at bar does not come under either of the alternatives of this rule. The money was not received under any mistake, either of law or fact, nor has the defendant done anything to nullify the consideration to the plaintiff and the defendant is entitled to retain it under, not only the permission, but the mandate of the statutes of the state, as we shall show further on.

The cases relied on by plaintiff are all primarily based on decisions of the Supreme Court of Nebraska, and the court

of that state in later cases seems to doubt the correctness of its earlier decisions, while following them. In Chamberlain v. City of Tecumseh, 43 Neb. 221, 61 N. W. 632, referring to these Nebraska cases on this question, the Supreme Court of Nebraska says: "While each member of the court, as now constituted, entertains some doubt as to the soundness of the doctrine laid down in these cases, we do not feel justified in disturbing a rule which has been so long recognized and followed by the court. The right to recover unearned license money is settled by the above decisions, and, if a different rule is to be adopted, it must come through a legislative enactment." And in Wood v. School District No. 32 (Neb.), 115 N. W. 308, 15 L. R. A. (N. S.) 478, where the administrator of a deceased person sued to recover the unearned portion of a license fee rendered inoperative by the death of the licensee, that court said:

"Upon the oral argument, I was favorably impressed with this proposition, for the reason it seemed fair and just that the estate of a deceased person should recover unearned license money so long as it was impossible to continue the business under the license. But, upon further consideration, I am convinced that the law will not permit a recovery. The deceased paid the license fee voluntarily, and received all that the licensing board could give to him. The license was not rendered inoperative through any fault of the authorities. In the absence of a statute permitting it, the legal representatives of a deceased licensee cannot recover any part of the amount paid for the liquor license because of the latter's death before the expiration of the term of the license."

The case of Allsman v. Oklahoma City, 95 Pac. 468, 16 L. R. A. (N. S.) 511, is relied on generally as the leading case on this question of the right to a refund where prohibition has gone into effect, either locally or statewide, and thus the right to sell liquor has ceased before the expiration of the license. In that case the court founded its decision on the Nebraska cases, as from that "State the Territory of Oklahoma adopted its statutes regulating the license and sale of intoxicating liquors." The cases from the State of

Washington are also strongly relied upon by plaintiff to support her contention. These cases are also based on the Nebraska cases and on the principle as stated in Pearson v. Seattle, 14 Wash. 438, 44 Pac. 884, as follows: "The respondent paid his money for a consideration which he has, in part, failed to receive, by reason of the act of the city. On the other hand, the city has received money for the granting of a privilege *which it has repudiated and annulled*. It is, therefore, in justice and equity, bound to repay it." Italics are ours.

The case of State v. Ritter (Wash.), 134 Pac. 492, was a case in which the license failed because the licensees were not citizens of the United States, and the City Council allowed a rebate and ordered a warrant drawn which the defendant, as Mayor, refused to sign, and mandamus was brought to compel him to do so. The court held that while the city might not be compelled to refund they had a right to compromise or settle disputed claims, and having ordered the warrant issued the Mayor should be compelled to sign it, saying: "Such repayment might not be compelled—that question is not before us—but the Council, if it sees fit, can return any money which has been paid under a mistake of law or fact, and to which it has no moral claim." And quotes with approval from Matthews v. Wesborough, 131 Mass. 521, as follows: "A vote to appropriate money for such a purpose is therefore binding upon them, even if upon subsequent examination it is ascertained that the claim which was to be settled thereby was one which could not have been successfully maintained." In Bart v. Pierce County (Wash.), 111 Pac. 582, while holding that "Syllabus '2'; A municipality which has obtained money or property without authority of law must, under principles of natural justice, refund it to the true owner," but as ten per cent of the money had been paid by the county into the state treasury that could not be recovered, saying: "The fee was lawfully paid into the county treasury in the first instance, and in so far as it has passed beyond the control of the county authorities, in accordance with law, the county is not liable for its

return. This is undoubtedly true of the 10 per cent of the fee paid over to the State Treasurer," and the decision is based on the Pearson case, *supra*, and the Nebraska cases. On the other hand, the cases holding against the right to recover in the absence of statutory authority authorizing it, are numerous, and in various ways state the rules applicable. In Phoebus v. Manhattan Social Club, 105 Va. 144, 8 Am. & Eng. Ann. Cases, 667, it is said: "In order for the plaintiff to maintain its action, it was necessary to show (1) that defendant had no authority to impose the tax; (2) that it actually received the money paid (this is conceded); and (3) that the payment was *not voluntarily made.*"

There is no question that the money was legally paid into the town treasury and the town, or its officers, have not done anything to render the license inoperative, as is said in Fitzgerald v. Witchard, 130 Ga. 552, 61 S. E. 227, 16 L. R. A. (N. S.) 519: "The agency which prevented the licensees from enjoying the privileges was the state law, separate and distinct from the municipal government. There is no more reason in equity and good conscience why the municipal authorities should be allowed to refund the money in this instance than there would have been had the licensee been prevented from enjoying the privileges of his license under some other independent agency over which the municipal government had no power or control."

In Peyton v. Hot Spring Co., 53 Ark. 236, 13 S. W. 764, the court said: "The payment of the license tax was legal, when made by appellant, and was voluntary on his part. If the effect of the judgment of the circuit court upon the petition for prohibition did not annul and revoke his license, he was not injured, and could not recover the amount paid therefor. If his license were annulled and revoked by said judgment, there is no authority in the statute for apportioning the amount of the license tax according to the time that appellant sold under the license. When the license was granted and accepted by him, the law authorized the county court, upon proper petition, to do what was afterwards done; and he is presumed to have known this, and to have

taken the risk of this being done." And in McGinnis v. Medway, 176 Mass. 67, 57 N. E. 210, it is said: "The licensing board, whether a special commission, or the mayor and alderman, or the selectmen, do not act as the agents of the city or town, but as public officers specially designated in that behalf; and, in the absence of any statute to the contrary, the city or town is not answerable for their acts as such officers. The license is not granted by the city or town, but by the state, acting through its duly-appointed officers. It is to be noted that we are not dealing with a case where from its very inception the license was a nullity. These licenses were issued by the proper tribunal, acting within its jurisdiction, and having the power to issue them."

In Neumer v. Jackson County, 271 Mo. 594, the court, on page 600, said: "In order to recover from a municipal corporation a tax or fee paid to it involuntarily and under protest, one of the essential prerequisites (among others), of the right of recovery, absent a statutory rule to the contrary, is, that it must appear that the tax or fee was illegal. (4 Dillon on Municipal Corporations (5 Ed.), Sec. 1617; American Union Express Co. v. St. Joseph, 66 Mo. 675, 1 c. 683.)" And again, on page 601: "The Court of Appeals permitted a recovery from the city of Carthage for the amount represented by the unexpired portion of the license, on the theory that the city itself, by adopting the local option law, had made it impossible for the plaintiff to use his license. * * * In the present case, it does not appear that any act of the county or its voters prevented the appellant from having the full use of the license, granted him." And the court held the petition did not therefore state a cause of action.

In the case of Smith v. Mayor and City of Toledo, 16 O. C. C. 362, the plaintiff sued both the mayor and the city to recover $100 as damages paid by him for a license which the mayor revoked without authority, as alleged, and ordered the policemen to prevent plaintiff from conducting the business licensed. A demurrer was interposed to an amended petition, as in this case, and the court said:

"Now the question is—and the sole question: Do the facts stated in this petition constitute a cause of action against the defendants, or either of them? It will be observed that· it is nowhere stated or claimed that the city, in any way, or any of its subordinates by virtue of the action of the council, or in any other manner, interfered with this business of the plaintiff in any particular; but the allegation is that it was the mayor, claiming to' act in his official capacity as mayor of the city, who revoked the license and interfered, with the assistance of a policeman, in preventing the plaintiff from carrying on his business under the license.

"It appears to us, from the facts as stated, that the mayor had no power or authority to revoke that license. There is no provision of the ordinance ·cited whereby the mayor is invested with any such power. The council passed an ordinance authorizing the license to be given upon payment of the sum of one hundred dollars. The mayor was authorized to issue the license upon the payment of such sum; but it is nowhere provided that the mayor may revoke the license which he has given and forbid the plaintiff from carrying on his business.· The council has not, in any manner, so far as this petition shows, taken· steps in the premises; they have not, by resolution or otherwise, directed the police authorities nor the mayor of the city to interfere or interrupt· or prevent the plaintiff from carrying on his business.   *   *   * The petition, therefore, shows no cause of action against the city, as it appears to us, and the demurrer of the city therefore, for that reason if for no other, was properly sustained.

"Now, as to the mayor himself; the proceeding being brought for the purpose of recovering from the mayor the sum of money which had been paid for the license and which he had paid into the treasury of the city, it shows no cause of action against the mayor. The mayor is authorized to issue the license, upon payment of a certain sum of money. It appears from the petition that the money has been paid and the license has been issued, and the mayor has paid the money into the treasury of the city. He has not got the

money, and he is not responsible for it. He cannot be called upon to return the money which has been paid for the license."

But the decision in this case might well be based on our statutes alone. Those applicable are sections 2835 and 2836, above quoted, and section 2826, which reads as follows:

"All licenses issued by any county in this state for the sale of liquors, or for owning or keeping a billiard table, or any table used for pool or bagatelle, and all licenses issued by said counties for any other game or games, not prohibited by the laws of this state, when the licensee shall be a resident of and carrying on the business for which he is licensed within the corporate limits of any incorporated town, city or village, the license shall be collected by the city marshal or collecting officers of such incorporated town, city or village, for the purposes mentioned in this chapter. It shall be the duty of such collecting officer, between the first and fifteenth days of each month, to pay into the treasury of such incorporated town, city or village, all moneys collected for such licenses, which moneys shall be applied to the general revenue purposes of such incorporated town, city or village."

Also Section 1, Chap. 13, Session Laws of 1911, as follows:

"That in all cases where a retail liquor license has been duly and legally issued and the license money fully paid into the treasury of any city or town of this state, and the said owner of such license having sold in good faith to a purchaser such saloon business, and a new license issued by any county, city or town for the carrying on and continuance of such saloon business, then and in that case, the authorities of such city or town shall credit upon such new license the unused portion of the license so belonging to the vender of such saloon business, and the purchaser of such business shall pay into the treasury of such city or town the remaining portion of such new license, and *no license money paid to any city or town for any liquor license shall be refunded* to any licensee." Italics are ours.

It is evident that the legislatures did not intend that any moneys paid for liquor license should ever be paid back and plaintiff paid the money in face of, and with knowledge of, these statutory provisions. As the authorities hold that voluntary payments cannot be recovered in absence of statutory authority, how much more is this true under the mandatory provision of our statutes against repayment. It is sometimes argued that liquor license fees are for regulation and not revenue and therefore are not governed by the rule as to no recovery of money paid as taxes, and while licenses to sell intoxicating liquor are generally for the purpose of regulation, they are also often for revenue as well, and in this state as to the cities and towns the county license fee is paid to the town as revenue simply, as is expressed in section 2826, Compiled Statutes, 1910, *supra*. "A construction of a statute by the legislature as indicated by the language of subsequent enactment is entitled to great weight." (36 Cyc., 1142.) That the last legislature of this state construed these statutes as prohibiting the return of any license fees by cities is shown by the fact that after enacting a statutory prohibition law to take effect after June 30, 1919, it enacted a statute permitting the cities and towns to refund the unearned portion of the license fee after prohibition went into effect. Section 1 of Chapter 100, Session Laws of 1919, is as follows:

"That whenever it shall become unlawful by reason of any United States law, or by reason of any State law, for any person, persons, company or corporation to be engaged in the retail liquor business in the State of Wyoming before the expiration of the full period for which a license authorizing the sale of liquors, wines and beers shall have been issued, as provided by Section 2832 of Chapter 10, Wyoming Compiled Statutes of 1910, as amended by Section 1 of the Session Laws of the year 1917, or, as provided by any other existing law of the State of Wyoming, the Board of County Commissioners of the respective counties in the State of Wyoming, and the City Commissioners and City Councils of any incorporated city in the State of Wyoming, who

may have issued such license, may refund to the person, persons, company or corporation who have paid the full license money, provided by law, such an amount of such license money paid as will cover the period of time, when by the laws of the United States or of the State of Wyoming, it shall have become unlawful for any person, persons, company or corporation, to be engaged in the retail liquor business in the State of Wyoming."

We hold that under our laws as they existed at the times mentioned in the amended petition there could be no recovery from a city or town of any portion of a liquor license fee paid for a license granted by the board of county commissioners of the county wherein such city or town was situated, the defendant city or town or its officers not having done anything to nullify the license. That the demurrer to the amended and substituted petition was properly sustained; that no error was committed by the lower court, and that the judgment is in all things affirmed.    *Affirmed.*

Beard, C. J., and Potter, J., concur.