SELMA GUBIN, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Queens, Fourth District, January 11, 1934.

*Jacques Schnurr*, for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel [Daniel L. Cammarano, Assistant*, of counsel], for the defendant.

PETTE, J. This is an action to recover the unearned portion of a fifteen-dollar fee paid by plaintiff to the department of health for a temporary permit to sell beer and light wines following the amendment to the Volstead Act and prior to the repeal of the Eighteenth Amendment.

Upon the payment of the fee, on April 27, 1933, the health department issued to plaintiff a permit the substantial portions of which are as follows: " Temporary Permit. Received from Selma Gubin, Owner-Applicant, the sum of Fifteen Dollars, in payment of fee for a temporary permit to sell Beer and Light Wines in classification D. A regular permit will be issued if the inspection by the Department of Health discloses that the owner-applicant complies with the provisions of the Sanitary Code and the regulations of the Board of Health. No fee paid hereunder will be refunded if a regular permit is denied or if this temporary permit or the regular permit is revoked for any cause whatsoever. This permit is not transferable and good only for the premises issued."

The permit was authorized by section 165-b of the Sanitary Code, which was adopted by resolution of the board of health on April 6, 1933. This section took effect the day following its adoption, and by its terms, any person could sell beer and light wines with such a permit.

As to the duration of the permit, said section 165-b provides: " This section shall take effect April 7, 1933, and temporary permits shall be issued for any period less than a year and at the expiration of which time they shall be extended in writing by the Board of Health so as to expire within a year from the date this section takes effect. No such temporary permits, however, shall be extended where inspection discloses that the permittee does not comply with the provisions of this section, the Sanitary Code and the regulations adopted by the Board of Health. Any fee paid for a

temporary permit shall not be refunded in the event that such permit is not extended or in the event such temporary or permanent permit is revoked for any cause whatsoever prior to the expiration date thereof."

Section 191 of the Sanitary Code also provides: " Permits; duration. All permits issued by the Board of Health for which an annual fee is required to be paid, pursuant to the provisions of this section, shall expire annually on a date determined by the Board of Health. All permits issued by the Board of Health without fee shall be, unless otherwise determined by the Board of Health, for an indefinite period until revoked."

So far as material, section 191 further provides: " Fee for permits. Applicants for the following permits required by the provisions of the Sanitary Code shall pay the annual fee herein stated: * * * Class D — Permit to sell bottle beer or light wines in bottles, to be consumed on the premises * * * $15."

It will be noticed that the temporary permit issued to plaintiff does not provide for its expiration. By construing the above-quoted provisions of sections 165-b and 191 and the language of the permit itself, the intent appears to be that the permit for which a fee was paid, while temporary only, was to be followed by a permanent permit (if an inspection of the premises warranted it) without the payment of an additional fee, which permanent permit was to expire not later than April 7, 1934. So that the fifteen dollars paid by plaintiff was an annual fee. The question at bar would not have arisen if the State law had not intervened.

On April 12, 1933, five days after said amendments to the Sanitary Code took effect, and fifteen days before the permit was issued, the State Alcoholic Beverage Control Law (Laws of 1933, chap. 180) took effect. That law provides for a comprehensive regulation of the liquor traffic in the entire State, and superseded by its express provisions all local laws or regulations upon the subject.

Section 130 of the Alcoholic Beverage Control Law provides as follows: " Local licenses. Notwithstanding the provisions of any general, special or local law, all licenses heretofore granted by a city, village or town for the brewing or sale of beer shall expire June first, nineteen hundred thirty-three. The fee paid to such city, village or town for such license so expiring shall be credited upon the license fee provided in this chapter for a license to brew or sell beer in case the holder of such city, village or town license shall be granted a license by the state board. In case the holder of such city, village or town license shall not be granted a license under the provisions of this chapter by the state board, such portion of the money so paid for such city, village or town license shall be returned to him by

such city, village or town *pro rata* in the proportion which the unexpired period for which such license was granted bears to the entire period thereof."

The question of whether there was any power to issue the license after said Alcoholic Beverage Control Law was passed, this license having been issued fifteen days thereafter, becomes immaterial in view of the disposition about to be made.

The complaint sets forth the facts relating to the issuance of the permit; that because of the intervening enactment of the State law, plaintiff was unable to exercise any of the privileges accorded her by said permit; that plaintiff did not and could not have procured a license under the State law owing to its more stringent provisions, and that her application for a refund of the money paid was refused. The defendant's answer contains a substantial general denial upon information and belief. Upon affidavit, plaintiff moves for summary judgment under rule 113 of the Rules of Civil Practice. The defendant has filed no affidavit or other proof, and there is nothing before the court tending to show that the defendant is entitled to defend. Both sides have submitted briefs, which, however, have induced me to make an independent examination of the law.

Plaintiff submits that by the express provisions of section 130, above quoted, she is entitled to have returned to her a part of the fee paid, " *pro rata* in the proportion which the unexpired period for which such license was granted bears to the entire period thereof." The city contends that section 130 is not applicable because the permit was merely temporary; was indefinite as to time of expiration; was revokable at will, and expired by operation of law when section 130 was enacted. The defendant's position amounts to a claim that the fifteen dollars was only to cover the temporary period which came to an end on June 1, 1933, pursuant to section 130 of the State law. Further, the defendant contends that the fee was paid voluntarily under a pure mistake of law, and cannot, therefore, be recovered. It is noteworthy that the defendant does not, in any respect, attack the provisions of said section 130 directing the return of the unearned fee.

The only question to decide is whether the licensee may recover back the unearned portion of the license fee where the license fails without fault of the licensee.

The fee was undoubtedly an annual fee. It was paid by plaintiff because the Sanitary Code required it before she could do business. The permit was never revoked, and the repeal of section 165-b of the Code on July 11, 1933, merely had the effect of effacing from the Code a provision which had already become extinct on June 1, 1933, by operation of the State law. Regardless of the question

of the validity of the permit, plaintiff could have operated thereunder up to June 1, 1933, by virtue of the provisions of section 130. On that day, pursuant to the provisions of section 130 of the State law, and without any fault of the licensee, the permit, like all other outstanding similar licenses throughout the State, became inoperative. The State has the constitutional power to so terminate all existing licenses. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367.) Therefore, if plaintiff is entitled to a refund, it is only from June 1, 1933, to April 7, 1934, one year from the time when the amendment to the Sanitary Code took effect, that is, for ten months, six days. (Sanitary Code, § 165-b.)

The universal rule of law is that money voluntarily paid to a municipal corporation under a claim of right, without coercion, fraud or imposition, for an illegal tax, license or fine, cannot be recovered either at law or in equity, upon the ground that such payment was due to the ignorance of the law by the licensee, from which the court may not relieve him. (Dillon Mun. Corp. [5th ed.] § 1621; McQuillin Mun. Corp. [2d ed.] § 1109.) But both authors and the authorities agree that no recovery may be had " without statutory aid."

The significance of this statement deserves emphasis in the instant case. Here we have a specific statute which is obviously grounded upon the legislative desire to reimburse the thousands of persons throughout the State who have paid fees to the various municipalities for temporary licenses, in case either the premises or the applicant did not have the qualifications necessary to obtain a permit under the State law and regulations. To allow the local authorities to retain the fee paid for a whole year would be plainly unjust. Upon the same principle, section 130 provides that any fee paid to towns and cities shall be credited upon the State license fee. To uphold the defendant's contention would amount to a flagrant disobedience of the plain mandate of the statute which has the conclusive effect of overcoming the general rule, presumably known to the Legislature, even in a case in which the elements of fraud or coercion do not exist. The enactment of section 130 expressly demonstrates the solicitude of the legislators to deal equitably with the people whose sovereign power they exercise, to subserve the public good. It does not lie with a subordinate entity to say, substantially, that the Legislature did not intend that which it has clearly expressed, or that it could not direct what it did, because the rule of law evolved by the adjudications is that money voluntarily paid may not be recovered, even though such were the invariable rule despite statutory grant, which it is not. (Dillon and McQuillin, *supra.*)

The terms of the statute are explicit and mandatory. If there were any doubt as to the legislative intent, it must be resolved in favor of the license holder, where the act authorized to be done concerns the public interest or the rights of individuals. (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387.) The provision for refund is analogous to the requirements of former Liquor Tax Laws providing for rebate for the unused period of a liquor tax certificate, as to which the Appellate Division in this Department has said: " We recognize that a certificate which is thus issued should carry with it a right to a just rebate if the State stop or suspend its operation without fault of the certificate holder." (*People ex rel. Doscher* v. *Sisson*, 182 App. Div. 734.) It is clear, therefore, that plaintiff is entitled to a *pro rata* refund by virtue of the unequivocal direction of the statute. This case furnishes the exception spoken of in the textbooks and in *Hebron* v. *City of New York* (78 Misc. 653), that despite the rule that money paid to a municipality under mistake of law may not be recovered, yet, " if the payment be one that in good conscience the city should not keep, the remedy is to be sought from the legislature." The statute under discussion unquestionably supplies the remedy. A different question would have been presented if the statute had directed only a partial refund (*People ex rel. Doscher* v. *Sisson, supra*), or no refund at all (*Peterson* v. *Town of Guernsey*, 26 Wyo. 272; 183 Pac. 645).

But, aside from the statute, it is appropriate to inquire whether (a) this fee was paid voluntarily in the sense that it was paid without legal coercion, upon a mistake of law, for which recovery may not be had, or (b) whether the fee was coerced by the licensor so as to constitute the payment involuntary, for which recovery will be allowed. This presents the pointed question: Can money be recovered when the object for which it is paid is frustrated, not by accident, nor by the act of the party paying it, but by the act of the party to which it is paid or by superior power — in this case the sovereign State? By approaching the question upon equitable considerations, the same result as that directed by the statute is easily reached.

Such a license is issued in the exercise of the police power, is a mere temporary permit authorizing that which would otherwise be prohibited, is not property in any legal or constitutional sense, and although it may be " a species of property " (*People ex rel. Doscher* v. *Sisson*, 180 App. Div. 464), does not confer vested rights so as to authorize an action at common law, based purely upon implied contractual liability arising out of property rights. (*Metropolitan Board* v. *Barrie*, 34 N. Y. 657; *People ex rel. Lodes* v. *Dept. of Health*, 189 id. 187; *Public Service Com.* v. *Booth*, 170 App. Div.

590.) And a permit issued as here, under the Sanitary Code provisions, is revocable by the board although there be no express power of revocation. (*Metropolitan Milk & Cream Co.* v. *City of New York*, 113 App. Div. 377.)

The defendant has received fifteen dollars as a license fee for one year. The permit ceased to have any further legal validity on June 1, 1933, through no fault of the licensee, but by operation of law. The defendant, therefore, has received and now has in its treasury a portion of said fee for which it has given nothing and could not lawfully give anything. That being so, the defendant has no right to the money. Its sole contention is that the payment was voluntary, and that, therefore, no recovery may be had. Shall the defendant be compelled to restore the excess fee? That is the ultimate question upon this branch of the case, and its solution depends upon whether the payment was voluntary or compulsory.

While it is the rule, as urged by defendant, that an illegal tax voluntarily paid may not be recovered (Dillon and McQuillin, *supra; Hebron* v. *City of New York*, 78 Misc. 653, and cases there cited), yet, where payment is made under circumstances which overcome the will and place one in a position where he will either pay or suffer penalties, the payment cannot be termed voluntary. It is not necessary that there be physical compulsion. It is the " moral coercion," the practical compulsion, which entitles the plaintiff to recover the money paid because of it, and the narrowness of the strict common-law rule with regard to duress is said to have been " much mitigated," and money so paid, as for example, excessive fees when taken under color of office, excessive charges collected for performance of a duty, etc., will be allowed to be recovered on the theory that there was a " moral coercion " which destroyed the contract. (*Adams* v. *Irving National Bank*, 116 N. Y. 606, 611; *Buckley* v. *Mayor of N. Y. City*, 30 App. Div. 463; affd., 159 N. Y. 558, which is a leading case on the subject, and is frequently cited; *Kilpatrick* v. *Germania Life Ins. Co.*, 183 id. 163.) The distinction between a voluntary and involuntary payment is very clearly pointed out in many cases. In *Tripler* v. *Mayor, etc., of New York* (125 N. Y. 617) it is said: " The very word used to describe an involuntary payment imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills." And in *Scholey* v. *Mumford* (60 N. Y. 498) it is said: " To constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion the payment is not voluntary." The rule was clearly stated in

*Radich* v. *Hutchins* (95 U. S. 210, 213) as follows: " To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter had no other means of immediate relief than by making the payment." (See, also, *Kilpatrick* v. *Germania Life Ins. Co., supra.*)

Applying the doctrine stated in the above cases to the facts at bar, it is difficult to perceive any element of voluntary payment.

*First.* Viewed in the light that the board had the power to impose the license fee, there was no illegality and there could be no mistake of law on the part of the licensee. These parties did not deal upon equal terms. The amendment to the Sanitary Code required plaintiff to obtain a license and pay the fee before she could do business. By section 224 of the same Code the refusal to first obtain a license would have subjected plaintiff to prosecution under section 1740 of the Penal Law, and punishment might be imposed up to imprisonment for one year and a fine of not more than $2,000, or both; and in addition thereto she would be liable to a penalty of not more than $250 under Greater New York Charter, section 1262, as authorized by said section 224. These were severe penalties to which plaintiff would have been exposed by not paying the fee and securing the license, and which she avoided by passively submitting to the requirements of the Code. Plaintiff was under a legal obligation to pay the fee and obtain the license. It is this element which distinguishes this case from the line of cases in which there is no legal obligation and there is no attempt to compel payment, and in which recovery is not allowed. (*Vanderbeck* v. *City of Rochester*, 122 N. Y. 285; *Buckley* v. *Mayor, supra; Tripler* v. *City of New York, supra.*)

That compulsion was actually exercised in that plaintiff was compelled to obtain the license to protect herself from prosecution as a criminal and from financial loss is obvious from the fact that when the board issued the license on April 27, 1933, it legally knew that the State law had been passed on April 12, 1933, and that the license which was being issued by defendant would be valueless by operation of law on June 1, 1933. By demanding the payment of a license fee for the entire year, the city has secured money for which it had no power to grant any privilege. Payment made under such circumstances cannot be said to be voluntarily made. The defendant does not contend that it had a right to an annual fee for a business which it was prohibited from permitting to continue under its own licensing power for more than two months.

In that respect, the facts at bar are parallel to those in *Olympia Brewing Co.* v. *State* ([1918] 102 Wash. 494; 173 Pac. 430), in which the excess fee for a liquor license was ordered returned, with the statement: " In view of the compulsion exercised, the state certainly should not be allowed to successfully maintain a lower standard of honesty than it insists upon its citizens observing."

The reason for the " moral coercion " rule is well illustrated in an English action in assumpsit for money had and received, decided over a century ago, where the plaintiff was allowed to recover the fee paid for a tavern keeper's license, which had been ordered by the mayor, without authority. The defense was that payment was voluntary, but the court, overruling the argument, said: " If one party has the power of saying to the other, ' That which you require shall not be done except upon the conditions which I choose to impose,' no person can contend that they stand upon anything like an equal footing." (*Morgan* v. *Palmer*, 107 Eng. Rep. 554.) This ruling was followed in *Allsman* v. *Oklahoma City* (21 Okla. 492; 96 Pac. 468; 16 L. R. A. [N. S.] 512), and seems consistent with reason. Such was the situation of the parties to this action and the fee was paid by plaintiff as the result of compulsion, and was not in any sense voluntary. (*Robertson* v. *Frank Bros.*, 132 U. S. 17; *Swift Co.* v. *United States*, 111 id. 22, and cases cited *supra*.)

The modern trend of judicial authority, and which is more in keeping with the spirit of the law, is that an action will lie for money had and received whenever one has money of another which he in equity and good conscience has no right to retain. (*Allsman* v. *Oklahoma City*, [1908] 21 Okla. 142; 96 Pac. 468; 16 L. R. A. [N. S.] 511, in which a liquor license was invalidated by a supervening constitutional amendment, and rebate was allowed.) The court there reviews authorities from England and the highest courts in California, Illinois, Massachusetts, Missouri, Nebraska, Ohio, Texas and Virginia, and, I may add, the cases of *Scott* v. *Trustees* (132 Ky. 616; 116 S. W. 788; 21 L. R. A. [N. S.] 112) and *Northrop* v. *Graves* (19 Conn. 548; 50 Am. Dec. 264). The principle governing an action for money had and received is that the possession of money has been obtained which cannot be conscientiously withheld. Such an action is designed for the advancement of justice, and it is applicable in all cases where defendant has money of the plaintiff which " *ex æquo et bono* " he ought to refund. In case of such equity the law will imply a promise to pay it. (3 Black. Com. 163; *Nash* v. *Towne*, 72 U. S. [5 Wall.] 689; *Pritchard* v. *Budd*, 76 Fed. 710, 714.) The principles of the action were very definitely stated by Lord MANSFIELD in the leading case of *Moses* v. *MacFerlan*

(2 Burr. 1002) and appear never to have been doubted (*Northrop* v. *Graves, supra*). He says: " If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action founded upon the equity of the plaintiff's case, as if it were upon contract  *  *  *.  This kind of equitable action to recover back money, which ought not in justice to be kept, is very beneficial, and, therefore, much encouraged."

For a learned discussion of Lord MANSFIELD's statement of this doctrine see *Northrop* v. *Graves* (*supra*), in which it is adverted, and it is held (going further than other cases), that the rule obtains whether the mistake under which the money was paid be one of fact or one of law, the court holding: "We mean distinctly to assert, that, when money is paid by one, under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, in an action of ' *indebitatus assumpsit*,' whether such mistake be one of fact or' of law; and this we insist may be done, both upon the principle of Christian morals and the common law."  This quotation was adopted in *Scott* v. *Trustees* (*supra*) as an " admirable statement of the principle," and it was held that the fee paid under the belief that the liquor license was valid had been paid under a mistake of law, and that whether of law or fact, if the money should not, in equity and good conscience be retained, recovery will be allowed.  (See, also, *Post* v. *Clark*, 35 Conn. 339, 341.)

The true criterion, then, is the honesty of the case, and not whether there is a knowledge of the facts and one acts in ignorance of the law. The maxim " *Ignorantia legis non excusat*," and the other that every man is bound and, therefore, " presumed to know the law," while much in requisition, are generally false in reality (*Northrop* v. *Graves, supra*), and that " *in foro conscientiæ*," ignorance of the law does not have the converse effect of furnishing a good excuse to defendant to retain money paid by one who was ignorant of the law.  On the question of the voluntariness of acts, referring to the maxim " *Volenti non fit injuria*," the court in the *Northrop* case had this to say: " We agree, that men should not complain of the consequences of their deliberate and voluntary acts; but we do not agree, that acts performed under the influence of essential and controlling mistakes, are voluntary, within the meaning of the maxim referred to.  And we say, that neither maxims of law, nor fictions of law, should be so applied, as to work manifest injustice."

In the *Allsman Case* (*supra*) it was held that the right of recovery should be sustained " on the plainest principles of natural justice." In *Bart* v. *Pierce County* (60 Wash. 507; 111 Pac. 582) the court

approved the ruling, adding that while it may not be supported by the weight of authority in other jurisdictions, it at least finds " support in the great principles of natural justice and common honesty, by which the conduct of the State and its instrumentalities as well as the conduct of the individual should be guided." (See, also, *Auburn* v. *Mayer*, 58 Neb. 161; 78 N. W. 462, in which the liquor license was revoked, and later reinstated by the court, and recovery for the unearned period was allowed.)

*Second.* Conversely, viewed as a payment made to the city without sanction of law, assuming that at the time the fee was paid the defendant had no authority to exact it, then the city exceeded its authority and it demanded and received a fee which it could not impose. But, in view of the Sanitary Code provisions, the payment was made under pressure of the prosecutions prescribed for doing business without obtaining the license, and it is against good conscience to retain it, and this is an additional reason why this action for refund can be maintained. (*Buckley* v. *Mayor, supra; Brisbane* v. *Dacres,* 5 Taunt. [Eng.] 90, cited in *Marshall* v. *Sneidker,* 25 Tex. 460; 78 Am. Dec. 534, which is followed in *Allsman* v. *Oklahoma City, supra.*) (See, also, *Scott* v. *Trustees, supra,* in which the liquor license was declared void through subsequent referendum making the area dry, and recovery of the unearned fee was permitted upon the ground that it was " in excess of what the city was entitled to retain, because the privilege of selling liquors, which the license conferred, failed by as much as the alleged excess to cover the period for which it was issued.")

My own notions of fairness find concrete support in the above adjudications, and upon principle and authority I hold that this is not a case of money illegally or erroneously or voluntarily paid for a license fee, but one in which it has been paid strictly in conformity to law, the object of which, by virtue of the State statute, has failed without the fault of either party; and further, that the payment was made under the coercion of law exercised by virtue of the provisions of the Sanitary Code in question, requiring the obtaining of the license and its other provisions prescribing punishment for failure to procure the same.

It follows, *first,* that the statute (Alcoholic Beverage Control Law, § 130) specifically directs a *pro rata* refund; *second,* that the defendant is not in equity and good conscience entitled to retain the money it received beyond June 1, 1933, for which this action for money had and received will lie, and *third,* that no defense appears possible. Summary judgment is, therefore, granted on behalf of plaintiff for twelve dollars and seventy-five cents, with interest from June 1, 1933.